OPINION
{¶ 1} This is an appeal by plaintiff-appellant, Carolina Tobacco Company, from a judgment of the Franklin County Court of Common Pleas, which granted summary judgment in favor of defendant-appellee, the Ohio Attorney General, on Counts 3, 4, 5 and 6 of appellant's amended complaint.
 {¶ 2} The following background facts are taken primarily from a magistrate's decision rendered on September 25, 2003, granting appellant's request for a preliminary injunction against appellee. In November 1998, several major tobacco companies entered into a Master Settlement Agreement ("MSA") with representatives of 46 states, including Ohio, the District of Columbia, and five territories. Pursuant to the MSA, the states agreed to dismiss their pending suits against the settling tobacco companies; in return, these companies, designated as "original participating manufacturers," agreed to make yearly payments to the states to defray health costs from smoking-related illnesses and to fund smoking prevention programs. The MSA contained a provision allowing other cigarette manufacturers, who were not signatories at the time the MSA was initially executed, to join the MSA as "subsequent participating manufacturers."
 {¶ 3} The MSA does not require all tobacco product manufacturers to participate in the agreement, and tobacco product manufacturers who choose not to participate are referred to as "non-participating manufacturers" ("NPMs"). However, pursuant to the MSA, states are required to enact certain legislation known as "qualifying statutes," requiring NPMs to make annual payments, based on their annual sales, into an interest earning escrow account; those funds are to be available to pay any future judgments or settlement of claims brought against NPMs.
 {¶ 4} Ohio's qualifying statute, which became effective June 30, 1999, is codified in R.C. Chapter 1346. R.C. 1346.02(B)(3) provides in part that "[e]ach tobacco product manufacturer that elects to place funds into escrow pursuant to division (B) of this section shall annually certify to the attorney general that it is in compliance with division (B) of this section." Further, the failure to certify subjects a manufacturer to potential fines and the prohibition against selling cigarettes in the state for up to two years.
 {¶ 5} Prior to 2003, appellant had provided certifications under R.C. 1346.02, and was permitted to sell cigarettes in the state. As of July 2003, appellant had made more than $2 million in payments into the state's escrow fund.
 {¶ 6} David Redmond who is appellant's president, chief executive officer, and sole employee, formed the company in 1998. Appellant developed the formula for Roger cigarettes, and it controls the product design, transportation, importing, advertising and marketing of Roger brand cigarettes in the United States.
 {¶ 7} On November 2, 2000, appellant entered into a production contract with House of Prince Riga ("HOPR"), SIA, a company based in Latvia. HOPR's parent company, House of Prince, is a participating manufacturer under the MSA. Appellant, however, is not a participating manufacturer under the MSA. Redmond signed the contract on behalf of appellant, whereby HOPR agreed to produce cigarettes for appellant for sale in the United States and elsewhere. HOPR was identified as the "manufacturer" of the cigarettes throughout the agreement, while appellant was listed as the "importer." Appellant's agreement with HOPR provided that appellant wished to market and sell Roger cigarettes "world wide and in the USA." The agreement further provided that HOPR did not own any formulas, recipes, flavors or other product know-how of Roger cigarettes.
 {¶ 8} Redmond owns the Roger trademark and assigned its use to appellant. With regard to the sale of Roger brand cigarettes in the United States, appellant controls the placement of orders, shipment, payment of federal excise taxes and payment of MSA obligations.
 {¶ 9} At all relevant times, appellant did not have any employees at or around the plant in Latvia where HOPR produced Roger cigarettes, although Redmond and others acting on his behalf would occasionally visit the plant to check HOPR's compliance with procedures and quality control. Appellant owns no machinery for the production of cigarettes, nor does it assemble or fabricate cigarettes. HOPR has obtained a security interest in the escrow payments appellant has made under the qualifying statute.
 {¶ 10} Appellee has joined in a lawsuit in the state of California involving House of Prince, the parent company. As part of the discovery phase of that litigation, appellee obtained information that led it to believe that House of Prince, not appellant, was the manufacturer of Roger cigarettes.
 {¶ 11} In 2003, Ohio enacted complementary legislation (the "2003 legislation") relating to its qualifying statute. The 2003 legislation requires, among other things, that tobacco manufacturers file an annual certification with appellee, and also provides for appellee to develop and publish on its website a directory listing of all tobacco product manufacturers that have provided current and accurate certifications, as well as the brand families listed on the certifications. Appellee does not list NPMs that have not filed certifications or whose certifications are not in compliance.
 {¶ 12} On July 18, 2003, appellant submitted to appellee a "Certification of Tobacco Product Manufacturer for Sales During 2002." On the form, appellant: (1) identified itself as an NPM; (2) identified "Roger" cigarettes as the only brand it intended to sell in Ohio; (3) represented that it sold 257,839,067 units of cigarettes in Ohio during 2002; and (4) represented that it had an NPM qualified escrow fund with a balance of $2,014,679.49. Appellant's certification application was the only information it provided to appellee prior to appellee's decision that appellant was not a tobacco product manufacturer.
 {¶ 13} A sample Roger cigarette package contains the words: "Made Under Authority of Carolina Tobacco Company, Richmond, VA. Made in South Africa." A different sample package of Roger cigarettes contains the following words: "Made Under Authority of Carolina Tobacco Company, Richmond, VA. Made in Latvia."
 {¶ 14} By letter dated July 23, 2003, appellee informed appellant that the state would not certify Roger cigarettes as an NPM brand. That letter provided in part that appellee had determined appellant did not manufacture the Roger brand cigarettes, and, therefore, such brand would not appear on appellee's website directory of brands that may be stamped or sold in the state.
 {¶ 15} On August 21, 2003, appellant filed a complaint against the Ohio Tax Commissioner ("commissioner") and appellee, seeking declaratory and injunctive relief for appellee's failure to include appellant or its cigarettes in appellee's website directory of brands that may be stamped and sold in the state. Also on August 21, 2003, appellant filed a motion for a temporary restraining order ("TRO") against appellee and the commissioner, which the trial court subsequently granted. On September 10, 2003, appellant filed a motion for summary judgment against appellee, asserting that the 2003 legislation violated appellant's due process rights and that the statute was unconstitutionally vague.
 {¶ 16} On September 18, 2003, appellant filed an amended complaint for declaratory and other relief. The amended complaint alleged a violation of R.C. Chapter 119, as well as a due process claim, a void for vagueness claim, and a claim that the 2003 legislation relating to the qualifying statute violated the Supremacy Clause. Appellant also sought declaratory and injunctive relief.
 {¶ 17} On September 24, 2003, appellee filed a motion for summary judgment. Also on that date, appellee filed a memorandum contra appellant's motion for summary judgment filed on September 10, 2003. The commissioner subsequently filed a motion for summary judgment.
 {¶ 18} On September 25, 2003, the magistrate filed a decision granting appellant's request for a preliminary injunction, finding that appellant had established a substantial likelihood of success on the merits as to its due process and R.C. Chapter 119 claims, and that appellant had proven it would suffer irreparable injury unless an injunction was granted. Both appellant and appellee filed objections to the magistrate's decision.
 {¶ 19} On February 19, 2004, the trial court filed a decision sustaining in part appellant's objections to the magistrate's decision, and granting its request for a preliminary injunction. The court found in part that the magistrate correctly determined appellant was not properly afforded a hearing pursuant to R.C. Chapter 119. However, the court agreed with the magistrate that appellant did not establish it was substantially likely to prevail on the merits of its void for vagueness claim or its Supremacy Clause claim.
 {¶ 20} By decision filed on August 19, 2004, the trial court granted in part and denied in part appellant's motion for summary judgment, and granted in part and denied in part appellee's motion for summary judgment. More specifically, in granting summary judgment in favor of appellee as to Counts 3, 4, 5 and 6 of appellant's amended complaint, the court found that the 2003 legislation was not unconstitutionally vague, and that there was no evidence of any genuine issue of material fact regarding appellee's application of the law when it determined that appellant was not a "tobacco product manufacturer." The court also found that appellant had failed to support its contention that the 2003 legislation conflicted with federal trademark law.
 {¶ 21} The court granted summary judgment in favor of appellant as to Counts 1 and 2 of its amended complaint, finding that appellee had violated R.C. Chapter 119 and appellant's due process rights. The court, however, did not find that the statute at issue was unconstitutional; rather, the court determined that appellant was entitled to a hearing, pursuant to R.C. Chapter 119, to ensure protection of its due process rights. Finally, the court granted the commissioner's motion for summary judgment on all counts.
 {¶ 22} On appeal, appellant sets forth the following three assignments of error for review:
1. The Court of Common Pleas erred in refusing to invalidate Ohio Rev. Code § 1346.01(I)(1) as unconstitutionally vague.
2. The Court of Common Pleas erred in holding that the Attorney General properly applied the 2003 Legislation and in denying Carolina Tobacco Company's request for relief pursuant to Civ.R. 56(F).
3. The Court of Common Pleas erred in holding that § 1346.01 et seq. does not violate the Supremacy Clause of the United States Constitution.
 {¶ 23} In its appeal, appellant challenges the trial court's grant of summary judgment in favor of appellee as to Counts 3, 4 and 5 of appellant's amended complaint, raising primarily issues of statutory interpretation. Both the propriety of summary judgment and questions of statutory interpretation are subject to de novo review by this court. See Donnelly v. Kashnier, Medina App. No. 02CA0051-M, 2003-Ohio-639, at ¶ 26 ("[s]tatutory interpretation involves a question of law; therefore, we do not give deference to the trial court's determination").
 {¶ 24} Under the first assignment of error, appellant contends that the trial court erred in failing to find R.C.1346.01(I)(1) invalid as unconstitutionally vague. Appellant contends that the statute does not contain a definition of "manufacturer," and that it fails to provide tangible criteria for what it means to be a manufacturer. Appellant also maintains that appellee's interpretation of the statute conflicts with Ohio's definition of "manufacturer" for purposes of products liability law.
 {¶ 25} In Buckley v. Wilkins, 105 Ohio St.3d 350,2005-Ohio-2166, at ¶ 17-19, the Ohio Supreme Court discussed the void for vagueness doctrine as follows:
"The due process clause of the Constitution provides the foundation for the void for vagueness doctrine." ColumbiaNatural Resources, Inc. v. Tatum (C.A.6, 1995), 58 F.3d 1101,1104. Laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," and laws must also "provide explicit standards" for the police officers, judges, and jurors who enforce and apply them. Grayned v. Rockford (1972), 408 U.S. 104, 108-109,92 S.Ct. 2294, 33 L.Ed.2d 222.
In weighing the appellants' constitutional challenge * * *, we must of course adhere to the oft-stated rule that a court's power to invalidate a statute "is a power to be exercised only with great caution and in the clearest of cases." Yajnik v. AkronDept. of Health, Hous. Div., 101 Ohio St.3d 106, 2004-Ohio-357,802 N.E.2d 632, ¶ 16. Laws are entitled to a "strong presumption of constitutionality," and any party challenging the constitutionality of a law "bears the burden of proving that the law is unconstitutional beyond a reasonable doubt." Id.
The void-for-vagueness doctrine "does not require statutes to be drafted with scientific precision." Perez v. Cleveland
(1997), 78 Ohio St.3d 376, 378, 678 N.E.2d 537. Rather, "it permits a statute's certainty to be ascertained by application of commonly accepted tools of judicial construction, with courts indulging every reasonable interpretation in favor of finding the statute constitutional." Id., 78 Ohio St.3d at 378-379,678 N.E.2d 537. The bar is not a high one, and a "civil statute that is not concerned with the First Amendment is only unconstitutionally vague if it is `"so vague and indefinite as really to be no rule [or standard] at all" or if it is "substantially incomprehensible."'" Chavez v. Hous. Auth. of ElPaso (C.A.5, 1992), 973 F.2d 1245, 1249, quoting United Statesv. Clinical Leasing Servs., Inc. (C.A.5, 1991), 925 F.2d 120,122, fn. 2, quoting A.B. Small Co. v. Am. Sugar Refining Co.
(1925), 267 U.S. 233, 239, 45 S.Ct. 295, 69 L.Ed. 589, and ExxonCorp. v. Busbee (C.A.5, 1981), 644 F.2d 1030, 1033. The fact that "`the fertile "legal imagination can conjure up hypothetical cases in which the meaning"' of disputed terms could be questioned does not render the provision unconstitutionally vague." Hutchins v. Dist. of Columbia (C.A.D.C. 1999),188 F.3d 531, 546, quoting Terry v. Reno (C.A.D.C. 1996), 101 F.3d 1412, quoting Grayned, 408 U.S. at 110, 92 S.Ct. 2294,33 L.Ed.2d 222, fn. 15, quoting Am. Communications Assn. v. Douds (1950),339 U.S. 382, 412, 70 S.Ct. 674, 94 L.Ed. 925.
 {¶ 26} The statutory provision appellant challenges, R.C.1346.01(I)(1)(a), states as follows:
(I)(1) "Tobacco product manufacturer" means an entity that after the effective date of this section directly (and not exclusively through any affiliate):
(a) Manufactures cigarettes anywhere that such manufacturer intends to be sold in the United States, including cigarettes intended to be sold in the United States through an importer (except where such importer is an original participating manufacturer (as that term is defined in the Master Settlement Agreement) that will be responsible for the payments under the Master Settlement Agreement with respect to such cigarettes as a result of the provisions of subsections II(mm) of the Master Settlement Agreement and that pays the taxes specified in subsection II(z) of the Master Settlement Agreement, and provided that the manufacturer of such cigarettes does not market or advertise such cigarettes in the United States)[.][1]
 {¶ 27} In order to determine legislative intent, "we must review the language of the statute, `"reading undefined words and phrases in context and construing them in accordance with the rules of grammar and common usage."'" State ex rel. Plain DealerPublishing Co. v. Cleveland, 106 Ohio St.3d 70, 2005-Ohio-3807, at ¶ 35, quoting State ex rel. Pontillo v. Public Emp.Retirement Sys. Bd., 98 Ohio St.3d 430, 2003-Ohio-4123, at ¶ 27.
 {¶ 28} In the present case, the magistrate rejected appellant's contention that R.C. 1346.01(I)(1) is unconstitutionally vague, noting that appellant, in its production contract, used the terms "manufacture" and "manufacturer" consistent with dictionary definitions, and that those definitions "would not confound a person of ordinary intelligence as to the conduct that is regulated in 1346.01 through 1346.10." In addressing appellant's challenge to the magistrate's determination on this issue, the trial court cited the definition contained in The American Heritage Dictionary of the English Language, (4 Ed.), defining the verb "manufacture" as: "a. To make or process (raw material) into a finished product, especially by means of large-scale industrial operation. b. To make or process (a product), especially with the use of industrial machines." In considering that definition, the court noted that appellant admitted "it does not own any equipment, nor does it physically process a raw material into a finished product." The court further found that the General Assembly's use of the word was consistent with the above definitions, and that appellee properly applied the law when it determined appellant is not a tobacco product manufacturer.
 {¶ 29} In Carolina Tobacco Co. v. Tennessee Dept. ofRevenue (Tenn.Ch. Ct. 2005), Case No. 04-1126-II, the court addressed and rejected a similar argument that Tennessee's qualifying statute, T.C.A. § 47-31-102(9), was unconstitutionally vague. In that case, the petitioner, Carolina Tobacco Company ("CTC") (appellant in the instant case) sought judicial review of an administrative order of the Commissioner of the Department of Revenue ("Commissioner"), finding that it was not a tobacco product manufacturer within the meaning of that state's qualifying statute, and, therefore, excluded from that state's directory.
 {¶ 30} The Tennessee Attorney General informed CTC that it would not be included in the state's directory because the state did not consider it to be the "tobacco product manufacturer" of "Roger" brand cigarettes. Rather, the attorney general determined that House of Prince was the tobacco product manufacturer of Roger cigarettes. The Commissioner subsequently issued a final order finding that CTC was not a tobacco product manufacturer within the meaning of the statute.
 {¶ 31} CTC appealed to the Chancery Court from the Commissioner's order. In Carolina Tobacco, the court found that resolution of the case hinged upon the meaning of the phrase "tobacco product manufacturer," as found in the statutory scheme. In examining the relevant statutes, the court held in part:
Neither the MSA nor the Tennessee Tobacco Statutes define the terms "manufacture" or "manufacturer." However, a plain reading of T.C.A. §§ 47-31-102(9) and 67-4-2601(9) shows that the Legislature made a distinction between entities that "directly" manufacture cigarettes and entities that manufacture cigarettes through an affiliate. To be considered a "tobacco product manufacturer" under section (I) of the statutes, an entity must either manufacture its cigarettes" directly" or it must be an Original Participating Member of the MSA that imports its cigarettes and agrees to be responsible for payments under the MSA with respect to such cigarettes.
As CTC is not an Original Participating Member of the MSA, the question thus becomes whether CTC manufactures its cigarettes "directly" or not. The use of statutory language juxtaposing cigarette importers against entities that manufacture cigarettes "directly" reveals that the legislature distinguished importers qua importers from "direct" manufacturers. No other logical conclusion can be drawn. Thus, the ALJ's reference to common dictionary definitions of "manufacture" merely serves to inform an analysis that must, of necessity, exclude CTC at the outset. Furthermore, the legislature chose not to incorporate into the statutes the varying criteria relied upon by CTC in its bid to be classified as a "tobacco product manufacturer." As the language of the statute is unambiguous, the court finds that under the ordinary and plain meaning of the statutes, CTC is not a "tobacco product manufacturer."
(Footnotes omitted.)
 {¶ 32} The "varying criteria" relied upon by CTC in CarolinaTobacco, and rejected by that court, included "whether an entity that does not directly produce cigarettes nevertheless holds rights to the cigarette brand's trademark, whether it chooses the tobacco used, whether it decides on quality standards, labels, packaging, etc." Id. at fn. 10. The court also declined to look to "other statutory schemes" different from the tobacco statutes (e.g., products liability law, etc.) to support a definition for the term "manufacturer," finding the language of the statute to be clear and unambiguous.
 {¶ 33} The court in Carolina Tobacco cited with approval the decision in Com. ex rel. Fisher v. Jash Intern., Inc.
(2004), 847 A.2d 125, in which the Commonwealth of Pennsylvania argued that a cigarette importer, Jash International, was a "tobacco product manufacturer," even though the cigarettes were produced and packaged in India by CTG Industries, Limited. Under the facts of that case, Jash International owned the trademark for the cigarettes at issue. The court in Jash found the language of the Tobacco Settlement Agreement Act ("TSAA") unambiguous, and rejected the Commonwealth's argument that the party who requests manufacture of a product is itself a manufacturer. As observed by the court in Carolina Tobacco, in analyzing that court's escrow statute, the Jash court looked "particularly [at] the requirement that the `tobacco product manufacturer' `directly' manufacture the cigarettes, in holding that Jash was not the manufacturer of the cigarettes." CarolinaTobacco.
 {¶ 34} Similar to the court in Carolina Tobacco, we find that the language of R.C. 1346.01(I)(1)(a) is not ambiguous. As noted above, R.C. 1346.01(I)(1)(a) defines a "tobacco product manufacturer" to mean an entity that "directly * * * [m]anufactures cigarettes anywhere that such manufacturer intends to be sold in the United States[.]" Consistent with the dictionary definition of manufacture, cited by the trial court in the present case, Black's Law Dictionary defines "manufacturer" as: "One who by labor, art, or skill transforms raw material into some kind of a finished product or article of trade." Black's Law Dictionary (5 Ed. 1979) 870. Reading the term "tobacco product manufacturer" in conjunction with (and giving meaning to) the legislature's choice of the modifier "directly," we do not find an ambiguity. In this respect, we agree with the court in Jash
that, "[h]ad the legislature intended the TSAA to cover all parties who are involved in the production and sale of tobacco products in the United States * * * it could have written the statute that way." Jash, supra, at 132. In the instant case, applying the ordinary meaning to the terms at issue, we find that the trial court did not err in failing to conclude that the statutory language was unconstitutionally void for vagueness.
 {¶ 35} Based upon the foregoing, appellant's first assignment of error is without merit and is overruled.
 {¶ 36} Under its second assignment of error, appellant contends that the trial court erred in denying its request for a continuance to conduct additional discovery pursuant to Civ.R. 56(F). By way of background, in its October 8, 2003 memorandum contra appellee's motion for summary judgment, appellant also filed a motion requesting that the trial court postpone its ruling on appellee's motion for summary judgment to allow appellant further discovery. More specifically, appellant sought additional time to authenticate a document identified as the "Ness-Motley Memorandum," and to explore whether appellee used such document in reaching its determination that appellant was not the manufacturer of the Roger brand cigarettes. That document had been previously provided to appellant through a discovery request.
 {¶ 37} Civ.R. 56(F) allows a party the opportunity "to request additional time to obtain through discovery the facts necessary to adequately oppose a motion for summary judgment."The Provident Bank v. Adriatic, Inc., Clermont App. No. CA2004-12-108, 2005-Ohio-5774, at ¶ 29.
 {¶ 38} Civ.R. 56(F) states as follows:
Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
 {¶ 39} The party requesting a Civ.R. 56(F) continuance bears the burden of establishing a factual basis and the reasons why such party cannot present sufficient facts to justify its opposition without a continuance. Adriatic, at ¶ 31. Further, whether that party has met its burden is a question of discretion, and a trial court's denial of a motion for continuance will not be reversed absent an abuse of discretion. Id.
 {¶ 40} In denying appellant's request for a continuance, the trial court reiterated its findings that R.C. 1346.01 was not unconstitutionally vague, and that appellant did not qualify as a manufacturer as that term is defined by its common and ordinary usage. The court therefore concluded that appellant had failed to state sufficient reasons that would warrant a delay in ruling on the issue. Upon review, we find no abuse of discretion by the trial court.
 {¶ 41} In its motion seeking a continuance, appellant failed to indicate how additional discovery would have given rise to issues of fact regarding the dispositive issue whether the term "tobacco product manufacturer," as defined by the statute at issue, was unconstitutionally vague as a matter of law. We also note that, in it's motion, appellant focused upon appellee's "admission" that it "could have or could not have" relied upon the memorandum in considering whether appellant was a tobacco product manufacturer. The record shows, however, that appellant had the document at issue prior to the preliminary injunction hearing, and appellant's counsel questioned appellee's witness, Arthur Marziale, as to its contents during the hearing. Marziale testified that he had not seen the document prior to his deposition, and he was extensively questioned regarding how appellee arrived at its determination whether appellant was a tobacco product manufacturer. Further, appellant did not move to have the document admitted at the hearing.
 {¶ 42} Based upon a review of the record, appellant's claim of appellee's reliance upon the document was merely speculative and, as noted above, counsel for appellant had the opportunity to explore this issue. Under these circumstances, we find no abuse of discretion by the trial court in denying appellant's Civ.R. 56(F) motion.
 {¶ 43} Appellant's second assignment of error is without merit and is overruled.
 {¶ 44} Under the third assignment of error, appellant asserts that the trial court erred in finding that the subject statute did not violate the Supremacy Clause. In its amended complaint, appellant alleged that the 2003 legislation conflicted with federal trademark law, as purporting to determine who is the source of a product subject to a registered trademark. Appellant argued before the trial court that the legislation was in contravention of the Lanham Act (Section 1051-1127, Title 15, U.S.Code); more specifically, that it violated the provisions of Section 1127, Title 15, U.S.Code.
 {¶ 45} The magistrate, in addressing appellant's Supremacy Clause argument, held that appellant did not provide any evidence that appellee's determination that House of Prince was the "tobacco product manufacturer" of Roger cigarettes, for purposes of R.C. 1346.05, would have the effect of misleading the public as to the source of Roger cigarettes. The trial court similarly rejected appellant's argument that Ohio's 2003 legislation conflicts with federal trademark laws.
 {¶ 46} The Supremacy Clause of the United States Constitution "dictates that whenever Congress has enacted legislation, any conflicting state law is deemed to be preempted, or `without effect.'" Minton v. Honda of Am. Mfg., Inc. (July 19, 1996), Montgomery App. No. 14949. Thus, a state law may be preempted if it conflicts with federal law, and such preemption "occurs either when the conflict between laws makes it `impossible to comply with both state and federal requirements,' or when the state law `stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id., quotingFreightliner Corp. v. Myrick (1995), 514 U.S. 280,115 S.Ct. 1483, 1487. However, the preemption of state law by federal statute or regulation is not favored "in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusions, or that the Congress has unmistakably so ordained." Florida Lime Avocado Growers,Inc. v. Paul (1963), 373 U.S. 132, 142, 83 S.Ct. 1210.
 {¶ 47} The purpose of the Lanham Act, as set forth under Section 1127, Title 15, U.S. Code, "is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce [and] to protect registered marks used in such commerce from interference by State, or territorial legislation[.]" See, also, Mariniello v.Shell Oil Co. (C.A.3, 1975), 511 F.2d 853, 858 ("[w]ithin the ambit of its intended operation, the Lanham Act expresses a Congressional design to legislate so that the public can buy with confidence, and the trademark holder will not be pirated"). Another provision of the Lanham Act, Section 1121(b), Title 15, U.S. Code, states that "[n]o State * * * may require alteration of a registered mark[.]"
 {¶ 48} In contrast, the purpose of Ohio's qualifying statute, similar to such statutes in other states, is to "ensure that [states] will be able to recover healthcare costs from cigarette manufacturers regardless of whether the manufacturer has signed on to the Master Settlement Agreement." Star Scientific, Inc. v.Beales (C.A.4, 2002), 278 F.3d 339, 349. The qualifying statute, while requiring tobacco product manufacturers to either participate in the MSA or elect to place funds into escrow, does not require alteration of a trademark, nor does it purport to address the use of trademarks.
 {¶ 49} It has been held that "[t]he Supremacy Clause bars only state statutes or doctrine that would permit the sort of confusing or deceptive practices the draftsmen of the Lanham Act sought to prevent." Bi-Rite Enterprises, Inc. v. Button Master
(S.D.N.Y. 1983), 555 F.Supp. 1188, 1201. In the instant case, we agree with the magistrate and trial court that appellant has not demonstrated that Ohio's qualifying statute permits "confusing or deceptive trademarks to operate, infringing on the guarantee of exclusive use to federal trademark holders," Mariniello, at 858, nor do we find a conflict between the Lanham Act and the qualifying statute. We therefore reject appellant's contention that the Lanham Act preempts Ohio's qualifying statute. Appellant's third assignment of error is not well-taken and is overruled.
 {¶ 50} Based upon the foregoing, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Petree and Sadler, JJ., concur.
[1] Under the statute, a "tobacco product manufacturer" also means an entity that "[i]s the first purchaser anywhere for resale in the United States of cigarettes manufactured anywhere that the manufacturer does not intend to be sold in the United States," or "[b]ecomes a successor of an entity described in division (I)(1)(a) or (b) of this section." R.C. 1346.01(I)(1)(b) and (c).