The STATE ex rel. ATTORNEY GENERAL [Marc Dann], Appellee,

v.

GRAND TOBACCO, Appellant.

[Cite as *State ex rel. Atty. Gen. v. Grand Tobacco,* 171 Ohio App.3d 551, 2007-Ohio-418.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–213.

Decided Feb. 1, 2007.

552

Marc Dann, Attorney General, and Damian W. Sikora, Assistant Attorney General, for appellee.

Pierre–Louis & Associates, L.L.C., and Lloyd Pierre–Louis, for appellant.

BROWN, Judge.

{¶ 1} This is an appeal by defendant-appellant, Grand Tobacco, from a judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of plaintiff-appellee, Ohio Attorney General.

{¶ 2} On September 25, 2002, appellee filed a complaint alleging that Grand Tobacco, a company with headquarters in the Republic of Armenia, was a "tobacco product manufacturer," as defined under R.C. 1346.01; it was further alleged that Grand Tobacco had not become a "participating manufacturer" under the Tobacco Master Settlement Agreement and that it had not funded a qualified escrow account as required under Ohio's laws with respect to manufacturers not participating in the agreement. Appellee sought injunctive relief and the imposition of civil penalties against Grand Tobacco.

{¶ 3} On October 18, 2002, appellee filed an amended complaint against Grand Tobacco. On December 10, 2002, Grand Tobacco filed a motion to dismiss, pursuant to Civ.R. 12, asserting insufficient service, lack of personal jurisdiction, and failure to state a claim upon which relief could be granted. Appellee subsequently filed a memorandum contra Grand Tobacco's motion to dismiss.

{¶ 4} On April 22, 2003, appellee filed a second amended complaint. Grand Tobacco filed a motion to dismiss the complaint on May 10, 2003. The trial court, by decision and entry filed June 12, 2003, denied Grand Tobacco's motion to dismiss appellee's second amended complaint.[1]

{¶ 5} On July 10, 2003, appellee filed a motion for summary judgment. The trial court subsequently granted appellee leave to file a third amended complaint. On December 22, 2004, appellee filed an amended motion for summary judgment.

---

1. On August 26, 2003, the trial court granted Grand Tobacco's motion for a Civ.R. 54(B) determination of "no just reason for delay" in entering final judgment as to the issue of personal jurisdiction. Grand Tobacco subsequently filed a notice of appeal from the court's entry denying its motion to dismiss, but by entry filed on October 13, 2003, this court dismissed Grand Tobacco's appeal for lack of a final, appealable order.

{¶ 6} By entry filed February 1, 2005, the trial court granted appellee's amended motion for summary judgment. In its entry, the trial court ordered Grand Tobacco to establish a qualified escrow fund and to deposit the amount of $417,993.87 into the fund for sales in Ohio of cigarettes it manufactured for the years 2000, 2001, 2002, and 2003. The court also imposed a monetary fine against Grand Tobacco for violating the provisions of R.C. 1346.02.

{¶ 7} On March 3, 2005, Grand Tobacco filed a notice of appeal from the trial court's February 1, 2005 entry granting appellee's amended motion for summary judgment. On appeal, Grand Tobacco sets forth the following two assignments of error for review:

Assignment of Error I

The trial court erred in concluding that R.C. 1346., *et seq.* creates personal jurisdiction over non-participating tobacco manufacturers notwithstanding Ohio's long-arm statute and traditional notions of due process.

Assignment of Error II

The trial court erred in denying appellant grand tobacco's motion to dismiss for lack of personal jurisdiction pursuant to Ohio Civ.R. 12(B)(2) on June 12, 2003, and subsequently entering summary judgment against it on February 1, 2005.

{¶ 8} Grand Tobacco's assignments of error are interrelated and will be considered together. In both assignments of error, Grand Tobacco challenges the trial court's exercise of personal jurisdiction over it as a foreign corporation on the grounds that its contacts do not subject it to jurisdiction under Ohio's long-arm statute or under the Due Process Clause of the United States Constitution.

{¶ 9} As noted, appellee's complaint alleged that Grand Tobacco is a tobacco product manufacturer, as defined under R.C. 1346.01, and that it had failed to fund a qualified escrow account under Ohio law. By way of background, in November 1998, several major tobacco companies entered into a Master Settlement Agreement ("MSA") with representatives of 46 states, including Ohio, whereby the states agreed to dismiss their pending suits against the settling tobacco companies. See *Carolina Tobacco Co. v. Petro,* Franklin App. No. 04AP-1125, 2006-Ohio-1205, 2006 WL 648851, at ¶ 2. In return, the settling tobacco companies agreed to make yearly payments to the states for the purpose of defraying health costs from smoking-related illnesses and to fund smoking-prevention programs. Id.

{¶ 10} The MSA does not require all tobacco manufacturers to participate in the settlement, and tobacco product manufacturers who choose not to participate are referred to as "non-participating manufacturers" ("NPMs"). Id., at ¶ 3. However, under the MSA, states are required to enact certain legislation, known

as "qualifying statutes," requiring NPMs to make annual payments, based on annual sales, into an interest-earning escrow account. Id.

{¶ 11} Ohio's qualifying statute is codified in R.C. Chapter 1346, and R.C. 1346.01(I)(1)(a) defines a "tobacco product manufacturer" to include an entity that "[m]anufactures cigarettes anywhere that such manufacturer intends to be sold in the United States, including cigarettes intended to be sold in the United States through an importer." Under the statute, a tobacco product manufacturer that elects to place funds into escrow is required to annually certify to the Attorney General that it is in compliance, and the failure to certify subjects a manufacturer to potential fines. *Carolina Tobacco*, 2006-Ohio-1205, 2006 WL 648851, at ¶ 4.

{¶ 12} In the instant case, while the trial court's grant of summary judgment in favor of appellee ordered Grand Tobacco to establish a qualified escrow fund and deposit funds into that account, as well as pay a monetary fine under R.C. 1346.02, the issues raised on appeal by Grand Tobacco are limited solely to the question of personal jurisdiction; specifically, whether the trial court erred in failing to grant Grand Tobacco's motion to dismiss appellee's amended complaint for lack of personal jurisdiction.

{¶ 13} In ruling on a motion to dismiss, pursuant to Civ.R. 12(B), a trial court must determine whether the complaint alleges any cause of action cognizable in the forum, and the court "is not confined to the allegations of the complaint in reviewing a motion to dismiss for lack of personal jurisdiction." *Buchheit v. Watson*, Lake App. No. 2001–L–189, 2002-Ohio-7147, 2002 WL 31862198, at ¶ 19. In response to a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden to make a prima facie showing of personal jurisdiction. Id. A trial court's decision whether to exercise personal jurisdiction over a party is a question of law. *Robinson v. Koch Refining Co.* (June 17, 1999), Franklin App. No. 98AP–900, 1999 WL 394512. As a question of law, this court reviews de novo a court's decision to exercise personal jurisdiction. Id.

{¶ 14} In deciding whether to exercise personal jurisdiction over a nonresident defendant, a trial court is required to (1) determine whether Ohio's long-arm statute and the applicable Civil Rule (Civ.R.4.3(A)) confer personal jurisdiction and, if so, (2) whether granting jurisdiction under the statute and rule would deprive the nonresident defendant of due process under the Fourteenth Amendment of the United States Constitution. Id. Ohio courts are required to engage in this two-step analysis "because the long-arm statute does not give Ohio courts jurisdiction to the limits of the due process clause." *Joffe v. Cable Tech, Inc.*, 163 Ohio App.3d 479, 2005-Ohio-4930, 839 N.E.2d 67, at ¶ 11, citing *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 238, 638 N.E.2d 541, fn. 1. See, also, *Irizarry v. E. Longitude Trading Co., Ltd.* (N.D.Ohio, 2003), 296 F.Supp.2d

862, 865 (because the Ohio Supreme Court has determined that Ohio's long-arm statute does not extend personal jurisdiction to the limits of due process, "both prongs of the constitutional analysis must be analyzed separately").

{¶ 15} Ohio's long-arm statute, R.C. 2307.382, states:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty * * *;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons * * *;

(7) Causing tortious injury to any person by a criminal act * * *;

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

{¶ 16} In the instant case, appellee argued before the trial court that Grand Tobacco was engaged in transacting business within Ohio pursuant to R.C. 2307.382(A)(1). More specifically, appellee argued that Grand Tobacco manufactured at its facilities in the Republic of Armenia various brands of cigarettes, including those bearing the brand names "Tough Guy," "Bonita" and "Garni," intended for sale in the United States, and that it then shipped such product to its affiliate, International Tobacco Partners, Ltd. ("ITP"), an importer located in New York; further, that, through this affiliate, Grand Tobacco's business in Ohio consisted of substantial cigarette sales to Ohio consumers.

{¶ 17} In asserting that it is not subject to personal jurisdiction in Ohio, Grand Tobacco argues that it is not licensed to do business in Ohio, that it has no offices or bank accounts in the state, that it has not personally made sales in Ohio, nor has it personally availed itself of the privilege of conducting activities within Ohio by certifying itself. Grand Tobacco also argues that there is no evidence it has sought to target its marketing efforts at Ohio consumers and that any cigarettes that may have entered Ohio did not result from its actions; rather, Grand Tobacco maintains, sales of its products resulted from the actions of unrelated distributors in other states.

■■ {¶ 18} Under Ohio law, R.C. 2307.382(A)(1) is "very broadly worded" and permits jurisdiction over nonresident defendants "who are *transacting any business in Ohio*." (Emphasis sic.) *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477. The Ohio Supreme Court has noted that the word "transact" means "to carry on business," and "to have dealings," and it is broader than the word "contract." Id. Moreover, "a person 'transacts business' in Ohio if the business operations set in motion by the defendant have a 'realistic impact' on Ohio commerce." *Priess v. Fisherfolk* (S.D.Ohio 1982), 535 F.Supp. 1271, 1274.

■ {¶ 19} For the reasons that follow, we find that the trial court did not err in determining that appellee made a prima facie showing that Grand Tobacco transacted business in Ohio as contemplated under Ohio's long-arm statute. Regarding Grand Tobacco's contention that it did not specifically target Ohio consumers, we note that it is undisputed that Grand Tobacco manufactures products for a United States market. In this respect, Grand Tobacco took intentional, specific steps to comply with the Federal Cigarette Labeling and Advertising Act, Section 1331 et seq., Title 15, U.S.Code, regarding cigarette sales in the United States, including the submission of ingredients lists for its products and the placement of the Surgeon General's warning label on its packaging; the packaging also contained country-of-origin marking. Grand Tobacco also took specific action to secure trademark registration for its products with the United States Patent and Trademark Office.

{¶ 20} Appellee further submitted evidence of a close, ongoing relationship between Grand Tobacco and its distributor, ITP, that went beyond that of a typical manufacturer and importer/distributor, including evidence that ITP's Chief Executive Officer, Jeffrey Uvezian, acted at various times on behalf of Grand Tobacco. More specifically, there was evidence that Uvezian, as "Managing Member, International Tobacco Partners," certified ingredients lists submitted by Grand Tobacco to the Center for Disease Control and Prevention. On the website of the United States Patent and Trademark Office, Uvezian is listed as the "Domestic Representative" for Grand Tobacco. Further, ITP's website, which listed "Bonita," "Tough Guy," and "Garni" brand cigarettes, specifically noted its "affiliation with Grand Tobacco."

{¶ 21} This close business relationship with an American distributor provided Grand Tobacco with an "established distribution channel" for its products to reach a United States market, including the forum state.[2] *Philips Electronics N.*

---

2. Grand Tobacco's close relationship with an American distributor, ITP, as well as its efforts to market in the United States, distinguishes this case from cases relied upon by Grand Tobacco, including *Comm. of Mass. v. SeKap S.A.* (Apr. 13, 2004), Mass.Super. No. 0105892,

*Am. Corp. v. Contec Corp.* (Mar. 11, 2004), D.C.Del. No. 02–123–KAJ, 2004 WL 503602 (jurisdiction over Korean manufacturer proper under "transacts business" provision of long-arm statute where there was evidence of an "established distribution channel" between foreign manufacturer and American corporation, resulting in product being sold in forum state). Further, in light of this relationship, we find unpersuasive Grand Tobacco's suggestion that once its products entered the United States, it was unaware of the ultimate destination. See *A. Uberti & C. v. Leonardo* (1995), 181 Ariz. 565, 892 P.2d 1354, 1363, quoting *DeJames v. Magnificence Carriers, Inc.* (C.A.3, 1981), 654 F.2d 280, 285 ("[a]llowing a defendant that has purposefully exploited the United States market to 'insulate itself from the reach of the forum State's long-arm rule by using an intermediary or by professing ignorance of the ultimate destination of its products' would undermine principles of fundamental fairness and due process").

{¶ 22} Appellee also submitted an affidavit by Uvezian in an unrelated proceeding, dated September 27, 2002, in which he averred that ITP's "sole activity is importing cigarettes manufactured abroad and intended for resale in the United States." [3] We note that there is nothing in the record in the instant case indicating that ITP's sales of Grand Tobacco products in the United States are limited to a particular state or region, and, in fact, the evidence suggests no limitation as to products being sold in Ohio. Eric Hicks, the vice-president of an Ohio wholesaler, submitted an affidavit stating that he placed an order for Tough Guy cigarettes and that ITP shipped 30 master cases of Tough Guy cigarette cartons from New York directly to the wholesaler's Ohio business address. It has been "held that, where a defendant has 'purposefully shipped the accused [product] into [the forum state] through an established distribution channel * * * [n]o more is usually required to establish specific jurisdiction.'" *Philips Electronics,* quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.* (Fed.Cir.1994), 21 F.3d 1558, 1564.

{¶ 23} The record also does not suggest that Ohio sales of cigarettes manufactured by Grand Tobacco were simply isolated occurrences; rather, there is evidence of repeated activity within the forum. More specifically, appellee's third amended complaint alleged that over 25 million units of Grand Tobacco's products were sold in Ohio from 2000 through 2003. In support, appellee submitted the affidavit of Dale Bischoff, an assistant administrator for the Ohio Department of

---

2004 WL 1588210, in which that court found a lack of jurisdiction over a Greek manufacturer; the court noted that other than sales to a Greek distributor, the foreign manufacturer had no further involvement with the distribution and sales of its cigarettes.

3. Uvezian further averred in that affidavit that ITP "is not a tobacco product manufacturer within the meaning of any of the Escrow Statutes enacted by the Settling States that are parties to the Master Settlement Agreement * * * executed on November 23, 1998."

Taxation, who averred that various units of Garni, Bonita, and Tough Guy cigarettes were sold in Ohio during 2000, 2001, and 2002, including 15,823,200 sticks of Tough Guy cigarettes sold in the state during 2002.

{¶ 24} Based upon the record in the present case, we find that Grand Tobacco's actions, including steps to market its products in the United States, and the utilization of a closely affiliated distributor, resulting in millions of cigarettes being shipped into this state for sale, are sufficient to demonstrate that it transacted business in Ohio, thus satisfying the requirements of R.C. 2307.382(A)(1).

{¶ 25} Having concluded that the trial court did not err in finding that Ohio's long-arm statute confers jurisdiction in this case, we must next address whether asserting jurisdiction over Grand Tobacco is consistent with due process concerns. The Ohio Supreme Court has held that "an Ohio court may assert personal jurisdiction over a nonresident defendant if the nonresident has certain minimum contacts with Ohio so that the case does not offend traditional due process concerns of fair play and substantial justice." *State ex rel. Toma v. Corrigan* (2001), 92 Ohio St.3d 589, 593, 752 N.E.2d 281, citing *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Under this analysis, "[t]he constitutional touchstone is whether the nonresident defendant purposely established contacts in Ohio so that the defendant should reasonably anticipate being haled into court there." *Toma,* 92 Ohio St.3d at 593, 752 N.E.2d 281. Further, "[a]lthough the unilateral activity of third parties does not satisfy this requirement, jurisdiction is proper if the contacts proximately result from actions by the defendant himself that create a substantial connection with Ohio." Id.

{¶ 26} In the instant case, the trial court found that Grand Tobacco, by taking steps within the United States to patent/trademark its products, to comply with federal regulations for the sale of cigarettes, and to distribute its products, purposely availed itself of conducting business in all 50 states, including Ohio. We agree.

{¶ 27} Grand Tobacco's contention that it did not have sufficient contacts with Ohio because its cigarettes entered the state through a distributor is not, in and of itself, dispositive of whether jurisdiction is appropriate under due process analysis. In *Mott v. Schelling & Co.* (May 29, 1992), C.A.6 No. 91–1540, 1992 WL 116014, the court addressed a similar contention by a foreign manufacturer that the mere act of shipping a product to an independent distributor in the United States did not subject it to the court's exercise of personal jurisdiction. Under the facts of *Schelling,* a Michigan plaintiff was injured by a saw manufactured by Schelling & Company ("Schelling"), a foreign limited partnership with its principal place of business in Austria. Schelling challenged the trial court's exercise of

jurisdiction on the basis that its contacts with Michigan were insufficient, i.e., Schelling contended that it only sold the saw to a United States distributor in Alabama and that title to the saw passed to Proctor when it received the machine.

{¶ 28} In finding that Schelling was subject to the court's jurisdiction, the court found significant that Schelling "knew its saws were being sold in the United States," that the company "actively cultivated its market here," taking into consideration United States standards in the design and manufacture of the saw, and that it "benefited from numerous U.S. sales." Id. The court further noted that Michigan had a "strong interest in exercising jurisdiction over Schelling," as the foreign company "placed its own product directly into the state of Michigan, albeit via Alabama." Id. Finally, the court found that Schelling could not avoid liability for the injuries caused by its product by "creating a paper transfer through a middleman," citing prior case law for the proposition that " 'the use of an independent distributor so that the manufacturer is only indirectly responsible for the product reaching an injured customer, in and of itself, will not insulate [a] nonresident foreign corporation from suit.' " Id., quoting *Poyner v. Erma Werke Gmbh* (C.A.6, 1980), 618 F.2d 1186, 1190.

{¶ 29} In *Tobin v. Astra Pharmaceutical Products, Inc.* (C.A.6, 1993), 993 F.2d 528, the court held that a Netherlands corporation, Duphar B.V. ("Duphar"), which submitted a new drug application for approval with the FDA and sought a distributor in the United States to exploit the American market, purposely availed itself of conducting business in the United States, thereby coming within Kentucky's long-arm statute giving rise to personal jurisdiction. The court cited with approval the *Schelling* decision in holding that Duphar could not expect to rely solely upon the use of an independent distributor to insulate itself from suit. Rather, the court in *Tobin*, 993 F.2d at 544, held:

> Duphar did not merely sell its product on the market with no direction in mind. Duphar directly submitted a New Drug Application to the FDA for approval, conducted clinical studies in the United States, and sought out a United States distributor to exploit the United States market. In this context, Duphar was not simply placing its product into the stream of commerce. Duphar purposefully availed itself of the privilege of conducting business in all states, including the state of Kentucky. * * *

> Duphar argues that it has done nothing in particular to purposefully avail itself of the Kentucky market as distinguished from any other state in the union. If we were to accept defendant's argument on this point, a foreign manufacturer could insulate itself from liability in each of the fifty states simply by using an independent national distributor to market its products, a result we specifically rejected in *Poyner*. * * *

{¶ 30} Similarly, we find in the instant case that Grand Tobacco "did not merely sell its product on the market with no direction in mind." *Tobin*, supra, at 544. Rather, it took specific actions, as noted above, to market and sell its products in the United States, and Grand Tobacco's efforts to set in motion these events ultimately resulted in its products being sold in Ohio.

{¶ 31} We also find that the exercise of jurisdiction over Grand Tobacco would be fair and reasonable. Grand Tobacco has "shown its familiarity with the United States administrative and legal process" by undergoing the task of obtaining trademark protection and complying with federal regulations regarding the sale of cigarettes. *Tobin*, 993 F.2d at 545 (foreign corporation's procurement of FDA approval for drug indicates that it "will not be lost in our complex legal system and shows a willingness by [corporation] to expend substantial resources to exploit the United States market"). Further, as found by the trial court, the state of Ohio has an interest in enforcing its escrow statutes, and "to 'ensure that [states] will be able to recover healthcare costs from cigarette manufacturers regardless of whether the manufacturer has signed on to the Master Settlement Agreement.'" *Carolina Tobacco*, supra, at ¶ 48, quoting *Star Scientific, Inc. v. Beales* (C.A.4, 2002), 278 F.3d 339, 349. We thus agree with the trial court that the exercise of personal jurisdiction over Grand Tobacco comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

{¶ 32} Based upon the foregoing, we conclude that the trial court did not err in denying Grand Tobacco's motion to dismiss for lack of personal jurisdiction. Accordingly, Grand Tobacco's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of appellee, is hereby affirmed.

Judgment affirmed.

KLATT and TRAVIS, JJ., concur.