OPINION
{¶ 1} Appellant, Ohio Attorney General Marc Dann ("the state"), filed this appeal seeking reversal of a judgment by the Franklin County Court of Common Pleas granting the motion to dismiss of appellee, Bulgartabac Holding Group ("Bulgartabac" or *Page 2 
"appellee"), for lack of personal jurisdiction. For the reasons that follow, we reverse the trial court's decision.
 {¶ 2} This case arises from litigation in which the state of Ohio sued a number of major tobacco companies seeking reimbursement for expenditures made by the state to treat Ohio citizens suffering from tobacco-related illnesses. Ultimately, the state of Ohio, along with 45 other states and the District of Columbia, entered into a settlement agreement, commonly referred to as the Master Settlement Agreement, or MSA. The MSA imposed certain obligations on the tobacco companies who were signatories to the agreement, including making monetary payments to each of the states and implementing certain restrictions on advertisements.
 {¶ 3} The MSA imposed on the participating states the requirement to adopt statutes that would impose some obligations on those tobacco companies that did not participate in the MSA. Under these statutes, the non-participating tobacco companies are required to make payments into an escrow fund in each of the participating states, with the amount of the payment being based on the number of cigarettes sold by the company in the state, either directly or through an intermediary. The money in these escrow accounts is to serve as a pool from which any future recovery by the state against the non-participating tobacco company will be paid. The Ohio General Assembly fulfilled these provisions of the MSA by adopting R.C. 1346.01 through 1346.03. Non-participating tobacco companies were required to begin paying into these escrow funds starting on April 15, 2000.
 {¶ 4} In a series of letters, the Attorney General's Office notified Bulgartabac that it had not made required escrow payments for the years 1999 through 2001, based on *Page 3 
information regarding cigarette sales provided by the Ohio Department of Taxation. Bulgartabac did not respond to any of the letters, and the state ultimately filed suit seeking preliminary and injunctive relief requiring Bulgartabac to pay funds into the required escrow account, and included a request that the court issue an order prohibiting Bulgartabac from selling cigarettes to Ohio consumers for a period not to exceed two years. The state subsequently filed an amended complaint alleging that Bulgartabac failed to make an escrow payment for the year 2002.
 {¶ 5} Bulgartabac filed a motion seeking dismissal of the complaint, alleging, among other grounds, the lack of personal jurisdiction. The trial court issued a decision and entry denying Bulgartabac's motion, specifically concluding that it could properly exercise personal jurisdiction over the company. Bulgartabac then sought to remove the case to the United States District Court for the Southern District of Ohio. The district court granted the state's motion to remand, and the Sixth Circuit Court of Appeals affirmed that decision.
 {¶ 6} The state then filed a second amended complaint, which added the claim that Bulgartabac failed to make an escrow payment for the year 2003. Bulgartabac filed an answer that included counterclaims alleging that Ohio's statute governing non-participating tobacco manufacturers violated the company's civil rights. The state filed a motion to dismiss Bulgartabac's counterclaims. The parties then filed cross-motions for summary judgment. The trial court denied the state's motion for summary judgment, and granted Bulgartabac's motion for summary judgment on the grounds that it lacked personal jurisdiction over Bulgartabac. Bulgartabac dismissed its counterclaims without prejudice, and the state filed this appeal, alleging as its sole assignment of error: *Page 4 
 The Court of Common Pleas erred in finding that the exercise of personal jurisdiction over Bulgartabac does not comport with due process.
 {¶ 7} Initially, we note that Bulgartabac argued below, and repeats the argument on appeal, that it is not a "tobacco product manufacturer" as defined in R.C. 1346.01, and therefore is not obligated to pay any funds into an escrow account. Bulgartabac argues that it is merely a holding company set up for a number of other corporations, some of which engage in the manufacture of tobacco products. The trial court did not address this argument, focusing instead on the question of whether it could properly assert personal jurisdiction over Bulgartabac. We decline to address this issue on appeal, finding that this is an issue that should be resolved through further proceedings on remand.
 {¶ 8} When determining whether a trial court may properly exercise personal jurisdiction over a nonresident defendant, it is necessary to engage in a two-step analysis. This analysis requires the court to determine: (1) whether Ohio's long-arm statute, R.C. 2307.382, and Civ.R. 4.3(A) confer personal jurisdiction and, if so, (2) whether granting personal jurisdiction under the statute and rule would deprive the defendant of due process under the Fourteenth Amendment to the United States Constitution. Clark v. Connor (1998), 82 Ohio St.3d 309,312, 1998-Ohio-385, 695 N.E.2d 751, citing U.S. Sprint CommunicationsCo., Ltd. Partnership v. Mr. K's Foods, Inc. (1994), 68 Ohio St.3d 181,183-184, 1994-Ohio-504, 624 N.E.2d 1048.
 {¶ 9} The second part of the analysis requires consideration of whether the defendant has sufficient minimum contacts with the forum state such that "the case does not offend traditional due process concerns of fair play and substantial justice." State ex rel. Toma v.Corrigan, 92 Ohio St.3d 589, 593, 2001-Ohio-1289, 752 N.E.2d 281, citing *Page 5 Internatl. Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed.2d 95. The inquiry into this constitutional issue depends upon consideration of whether the defendant should reasonably anticipate being haled into court in the forum state. Toma, supra at 593. Both steps of the analysis must be considered, because "the long-arm statute does not give Ohio courts jurisdiction to the limits of the due process clause." Joffe v. Cable Tech, Inc., 163 Ohio App.3d 479, 2005-Ohio-4930, at ¶ 11, 839 N.E.2d 67, citing Goldstein v. Christiansen,70 Ohio St.3d 232, 238, fn. 1, 1994-Ohio-229, 638 N.E.2d 541.
 {¶ 10} Generally, the issue of personal jurisdiction is raised by way of a motion to dismiss pursuant to Civ.R. 12(B)(2), rather than a motion for summary judgment pursuant to Civ.R. 56. Once a defendant has raised the issue of personal jurisdiction, the burden falls on the plaintiff to establish personal jurisdiction. First Mut. Financial Corp. v. FamilySavers of Mississippi, Inc. (June 29, 1999), Franklin App. No. 98AP-1436, citing Jurko v. Jobs Europe Agency (1975), 43 Ohio App.2d 79,72 O.O.2d 287, 334 N.E.2d 478. If the court decides the issue of jurisdiction without holding an evidentiary hearing, the court must consider the allegations in the pleadings, as well as any other evidentiary materials, in a light most favorable to the party seeking to establish personal jurisdiction, and determine whether that party has set forth a prima facie case for jurisdiction. Meglan, Meglan and Co.,Ltd. v. Abante Corp., Franklin App. No. 07AP-130, 2007-Ohio-5013.
 {¶ 11} We recently considered the question of whether Ohio courts may exercise personal jurisdiction over a foreign tobacco manufacturer inState ex rel. Attorney General v. Grand Tobacco, Franklin App. No. 05AP-213, 2007-Ohio-418. Grand Tobacco involved a tobacco product manufacturer headquartered in the Republic of Armenia *Page 6 
whose products were sold in the United States through a distributor. We found that the exercise of personal jurisdiction over the tobacco product manufacturer in that case was consistent with both Ohio's long-arm statute and the due process clause.
 {¶ 12} The state argues here, as it did in Grand Tobacco, that personal jurisdiction is appropriate under R.C. 2307.382(A)(1), which provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state * * *." Likewise, Civ.R. 4.3(A)(1) provides for out-of-state service of process on a defendant who is "[transacting any business in this state[.]" Ohio courts have held that the phrase "transacting any business" has a broad meaning that goes beyond the entry into contracts. Kentucky Oaks MallCo. v. Mitchell's Formal Wear, Inc. (1990), 53 Ohio St.3d 73,559 N.E.2d 477. A defendant is considered to have transacted business in Ohio "if the business operations set in motion by the defendant have a `realistic impact' on Ohio commerce." Priess v. Fisherfolk (S.D.Ohio 1982), 535 F.Supp. 1271, 1274.
 {¶ 13} In Grand Tobacco, in considering whether the tobacco product manufacturer was transacting business in Ohio for purposes of the long-arm statute, we considered a number of factors. First, we considered the steps that were taken to market the manufacturer's products in the United States, including submission to the appropriate agency of ingredient lists, placement of the United States Surgeon General's warning on the packaging, and taking specific actions to secure trademark registration in the United States. Grand Tobacco, at ¶ 19. Next, we considered the close relationship that existed between Grand Tobacco and its American distributor, which created an "established distribution channel" for the company's product to reach the United States market. Id. *Page 7 
at ¶ 21, citing Philips Electronics N. Amer. Corp. v. Contec Corp.
(D.C.Del., Mar. 11, 2004), No. 02-123-KAJ, 2004 U.S. Dist. LEXIS 3940. Finally, we concluded that the volume of sales of Grand Tobacco's products, over 25 million units sold from 2000 through 2003, was sufficient to establish that the manufacturer was transacting business within the state. Grand Tobacco, at ¶ 23.
 {¶ 14} In this case, although Grand Tobacco had not been decided at that time, the trial court addressed all of these factors. However, it did so in addressing the issue of whether Bulgartabac had established sufficient minimum contacts such that the exercise of personal jurisdiction would comport with due process. The court did not consider these factors in analyzing whether Bulgartabac was subject to the long-arm statute, finding that the question of whether Bulgartabac was transacting business in Ohio was "debatable" without deciding the issue.
 {¶ 15} The trial court had denied Bulgartabac's initial motion to dismiss for lack of personal jurisdiction, relying on evidence regarding Bulgartabac's participation in ensuring that the packaging for the cigarettes complied with United States law. On summary judgment, the court considered additional evidence regarding this issue, and accepted Bulgartabac's argument that it had no part in the packaging, pointing to evidence that packaging was done at the direction of MBR International Corporation, a distributor located in Florida.
 {¶ 16} With respect to the question of Bulgartabac's relationship with American distributors, the trial court accepted Bulgartabac's argument that it had no relationship with any American distributors, and that the only distributors it had any contact with were operating only in Bulgaria. However, the documents provided by the state appear to *Page 8 
indicate that some relationship existed between Bulgartabac and two distributors located in the United States, MBR International and Durango Distributors. For example, appellant's Exhibit 15 includes two letters, one a letter to the Tennessee Attorney General from an attorney apparently representing Bulgartabac, and one to the Virginia Attorney General on Bulgartabac letterhead. The letter to the Tennessee Attorney General states that the Larson brand is owned by Durango, but manufactured by Bulgartabac; while the letter to the Virginia Attorney General indicates that Bulgartabac had given authority to Durango to enter into any necessary escrow agreement.
 {¶ 17} On the issue of the volume of sales of the Larson, Maxxim, and First US brands, the state offered evidence in the form of reports provided by the Ohio Department of Taxation regarding the reported sales of those brands. The reports identify Bulgartabac as the manufacturer of those brands, although neither the documents themselves nor the affidavit from a Department of Taxation employee incorporating those documents into the record state the basis for the conclusion that Bulgartabac was the manufacturer. The trial court considered the evidence regarding the volume of sales, but rejected that evidence as insufficient to establish personal jurisdiction by itself.
 {¶ 18} Since the trial court elected to decide the personal jurisdiction issue without holding a full evidentiary hearing, the court was required to view the evidence offered by the State in a light most favorable to a finding of jurisdiction. In this case, the trial court considered not only the evidence offered by the state, but also evidence offered by Bulgartabac, which was inappropriate under the framework that has been established to consider a defendant's claim of lack of personal jurisdiction when decided without a full evidentiary hearing. The state offered evidence that Bulgartabac was involved in the *Page 9 
packaging of the tobacco products at issue, that Bulgartabac had a relationship with American distributors that were responsible for sales of those products in Ohio, and that significant volumes of cigarettes were sold in Ohio. Viewed in a light most favorable to the state, this evidence was sufficient to set forth a prima facie showing that Bulgartabac was transacting business in Ohio for purposes of the long-arm statute under Grand Tobacco.
 {¶ 19} In considering the due process component of personal jurisdiction, it is necessary to determine whether the nonresident defendant had more than mere "awareness that the stream of commerce may or will sweep the product into the forum State[.]" Asahi Metal IndustryCo. v. California (1987), 480 U.S. 102, 112. A number of factors relevant to consideration of whether a defendant is transacting business within a forum state are also relevant to assessing that defendant's awareness that its products will be sold in a forum such that minimum contacts may be said to exist. For example, in Grand Tobacco we considered the steps taken by the manufacturer to obtain trademark protection under United States law and to ensure its products were packaged in accordance with United States law as indications that the manufacturer purposely availed itself of the privilege of conducting business in all of the states, including Ohio.
 {¶ 20} In Grand Tobacco, we also considered the role that a distributor may play in determining whether exercise of personal jurisdiction over a nonresident defendant comports with due process. We recognized that a nonresident defendant cannot insulate itself from being sued in United States courts by sending its products to an independent distributor. Grand Tobacco, supra at ¶ 27-29, citingMott v. Schelling Co. (C.A.6, *Page 10 
May 29, 1992), No. 91-1540, 1992 U.S.App. LEXIS 13273; Tobin v. AstraPharmaceuticals Prods., Inc. (C.A.6, 1993), 993 F.2d 528.
 {¶ 21} The State offered evidence that Bulgartabac used a distributor with which it had a close working relationship, and that it took steps to ensure compliance with United States law regarding cigarette packaging. Viewed in a light most favorable to the state, we believe this evidence was sufficient to set forth a prima facie case that Bulgartabac purposely availed itself of the privilege of conducting business within all of the states, including Ohio, such that the exercise of personal jurisdiction over the company would not violate due process.
 {¶ 22} Consequently, the trial court erred when it found that the state failed to set forth a prima facie case that the court could properly exercise personal jurisdiction over Bulgartabac. Consequently, we sustain the state's assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, and remand this cause for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
TYACK and DESHLER, JJ., concur.
 DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1