489 So.2d 54 (1986)
MARYLAND CASUALTY CO., Appellant,
v.
DEPARTMENT OF GENERAL SERVICES, the Florida Board of Regents, Moore May Graham Brame Poole/Architects, Inc., Geiger Berger Associates, P.C., Printer Contracting Co., Inc., David H. Geiger, and Lester N. May, Appellee.
No. BI-298.
District Court of Appeal of Florida, First District.
March 11, 1986.
Rehearing Denied April 11, 1986.
Jonathan L. Alpert, of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellant.
*55 Thomas M. Beason, of Moyle, Flanigan, Katz, Fitzgerald & Sheehan, P.A., Tallahassee, for appellee.
ZEHMER, Judge.
Maryland Casualty Co., one of the defendants in this action against its insured, Pinter Contracting Co., and others, appeals an interlocutory order denying its motion to compel arbitration or, in the alternative, to dismiss appellees' complaint for lack of jurisdiction. We have jurisdiction of this appeal under rule 9.130(a)(3)(C)(v), Florida Rules of Appellate Procedure.
The following essential facts appear in the complaint and in plaintiffs' response to a request for more definite statement. The Department of General Services (DGS) and the Board of Regents (BOR) approved a project for the construction of a mass seating/natatorium facility, now known as the O'Connell Center, at the University of Florida. DGS and BOR contracted with Moore May Graham Brame Poole Architects, Inc. (Moore, May), to provide professional services for design of the facility. Moore, May in turn contracted with Geiger Berger Associates, P.C. (Geiger Berger), a consulting engineering firm, to provide structural and other engineering services. Moore, May and Geiger Berger prepared the design and project drawings, which were then used by DGS as the basis for soliciting bids. Bids were received, and the apparent low bid exceeded the estimate of probable construction costs prepared by Moore, May and Geiger Berger by more than $1,000,000. Moore, May and Geiger Berger requested and were authorized by DGS to meet with the low bidder, Dyson and Co., and various proposed subcontractors to review reasons for the large disparity between the bid and the estimated probable cost. This review indicated major differences in the cost of precast concrete elements forming the major structural elements of the project.
During these post-bid meetings, Geiger Berger suggested that Pinter Contracting Co., Inc., a precast contracting and engineering firm with whom Geiger Berger had prior business arrangements, was adept at devising methods for reducing the cost of precast concrete work and proposed that Dyson work with Pinter, in lieu of its proposed precast subcontractor, to develop reduced prices for the precast work. Consequently, Geiger Berger consulted with Pinter for the purpose of reviewing the existing structural design and proposing modifications to achieve cost savings that would bring the Dyson price proposal within the amount of available funding. Pinter and Geiger Berger prepared sketches conceptually depicting certain major structural revisions to the project, primarily in changing many of the large precast concrete elements, and Pinter represented that the recommended changes would reduce the cost but would not affect the structural integrity of the structure. Pinter prepared its revisions and price proposal in hopes of becoming Dyson's precast subcontractor on the project. Unknown to DGS and BOR, Pinter offered to hire Geiger Berger to do the necessary engineering and issue revised structural drawings at Pinter's expense.
DGS and BOR accepted and relied on Moore, May and Geiger Berger's recommendations, which were based on Pinter's advice, that the proposed structural modifications were safe and consistent with the intended design and function of the O'Connell Center. After the proposed revisions were incorporated into the bid drawings and specifications by written addendum prepared by Moore, May and Geiger Berger, DGS and BOR executed a contract with Dyson as general contractor for construction of the facility. This construction contract anticipated that Moore, May and Geiger Berger would immediately prepare and issue revised architectural, structural, and other drawings to be used as final contract drawings for the project.
The allegations in count two of the complaint specifically implicate Pinter in the following fashion. Unknown to DGS and BOR, Pinter and Geiger Berger collaborated during the post bid negotiations in preparing and recommending proposed *56 changes to the project and agreed that, in the event the construction contract was awarded, Pinter would, at its own expense and responsibility, employ Geiger Berger to prepare and issue the revised structural drawings incorporating Pinter's proposals, and Pinter and Geiger Berger agreed that during construction Geiger Berger would incorporate further modifications prepared by Pinter into the reissued project drawings to reduce Pinter's cost of performance. After the construction contract between Dyson and DGS was executed, Moore, May and Geiger Berger prepared revised structural drawings incorporating the proposed revisions supplied by Pinter for the project. Thereafter during construction they issued modifications to those drawings, at Pinter's request, to reduce Pinter's costs. Pinter paid Geiger Berger for these services. It is then alleged that Pinter, having voluntarily undertaken to give professional design advice to Moore, May and Geiger Berger, owed a duty to use reasonable care in the preparation of all contract drawings and specifications necessary to the construction of the project, but negligently failed to do so in numerous specific respects, which caused the finished construction project to be unsafe and unfit for its intended use and necessitated many structural modifications and corrections. Plaintiffs claimed extensive damages as a result.
Appellees alleged in count six that Pinter was insured under a policy of liability insurance written by Maryland Casualty which provided coverage for damages caused by Pinter's alleged negligence and that, as third-party beneficiaries of that insurance contract, appellees are entitled to recover damages caused by Pinter's negligence.
Maryland Casualty moved the trial court to enforce an arbitration clause in the general contract between appellees and Dyson (the general contractor) or to dismiss the complaint if plaintiffs refused to arbitrate, alleging that the cause of action against its insured (Pinter) necessarily arose out of the performance of the subcontract between Pinter and the general contractor, which specifically incorporated the arbitration provisions in the general contract. Maryland Casualty contended that these arbitration provisions were binding on DGS and BOR as third-party beneficiaries of the Pinter subcontract, citing Zac Smith & Co. v. Moonspinner Condominium Ass'n, 472 So.2d 1324 (Fla. 1st DCA 1985). The trial court denied Maryland Casualty's motion to compel arbitration or dismiss, and this appeal ensued.
Had appellees brought their action against Pinter as third-party beneficiaries of Pinter's subcontract with Dyson, there is no doubt that the arbitration clause would have been enforceable at the election of Pinter and its insurer, Maryland Casualty. Zac Smith & Co. v. Moonspinner Condominium Ass'n, 472 So.2d 1324. But that is not the case here. The negligent acts alleged against Pinter did not arise under the terms of its subcontract with Dyson to provide precast concrete for the facility, nor out of its performance of that subcontract. Rather, appellees cause of action arose out of Pinter's performance of its alleged undertaking and agreement with the architects and engineers, independent of Pinter's subcontract with Dyson, to provide design and engineering advice and services. It is well established in Florida that an individual who volunteers to act for the benefit of a third party thereby assumes a duty to that third party which must be exercised in a reasonable manner, and that breach of this duty may give rise to a cause of action for negligence. Fidelity & Casualty Co. of New York v. L.F.E. Corp., 382 So.2d 363 (Fla. 2d DCA 1980). The complaint and appellees' more definite statement filed with the court below make it quite clear that the cause of action against Pinter arose out of Pinter's voluntary undertaking to participate in the design of the facility in conjunction with the architects and engineers rather than as a consequence of the subcontract with general contractor Dyson. Since this voluntary undertaking was for the benefit of DGS and BOR, as well as the architects and engineers, *57 we find no error in the trial court's ruling.
Additionally, even if we were to construe the cause of action against Pinter as coming under the terms of the subcontract, thus making the arbitration provision applicable, the record reveals that Pinter waived its right to elect arbitration and proceeded to litigate in court by filing an answer to appellees' complaint, filing discovery requests, and filing various motions without raising the right to arbitration. The right to arbitration can be waived by one taking actions inconsistent with arbitration, such as actively participating in the judicial proceeding. Lapidus v. Arlen Beach Condominium Ass'n, 394 So.2d 1102 (Fla. 3d DCA 1981); Seville Condominium No. 1, Inc. v. Clearwater Development Corp., 340 So.2d 1243 (Fla. 2d DCA 1977). This waiver by Pinter also operated to waive any right Maryland Casualty had to enforce the arbitration provision in the subcontract because Maryland Casualty claimed its right to arbitrate as a third-party beneficiary of that subcontract.[1] It is clear that a third-party beneficiary's right to enforce a contract cannot "rise higher than the rights of the contracting party through whom he claims." Crabtree v. Aetna Casualty & Surety Co., 438 So.2d 102, 105 (Fla. 1st DCA 1983).
AFFIRMED.
THOMPSON and BARFIELD, JJ., concur.
NOTES
[1] We do not agree, however, that Maryland Casualty is a third-party beneficiary of the subcontract between Pinter and Dyson, the general contractor. To qualify as an intended third-party beneficiary, it must be shown that the contracting parties intended to confer a direct and primary benefit on the third party. Security Mutual Casualty Co. v. Pacura, 402 So.2d 1266 (Fla. 3d DCA 1981). The record does not demonstrate such an intent with respect to Maryland Casualty.