OPINION
{¶ 1} Defendant-appellant, The Wilmington Savings Bank ("WSB"), appeals from the Fayette County Common Pleas Court's decision ordering it to convey certain property to plaintiffs-appellees, James D. Sowers and Tina R. Sowers.
 {¶ 2} The Sowerses owned a one and a quarter-acre lot located at 28208 Creighton Road, in Pickaway County, Ohio. On July 28, 1999, they contracted with Jonathan W. Heidler, a local area builder and contractor, to have him construct a residence for them on the lot for $99,925.
 {¶ 3} The agreement required the Sowerses to pay Heidler a $7,925 nonrefundable deposit at the signing of the contract. The parties financed the construction with a loan from WSB. WSB informed the Sowerses that while it would not provide a construction loan to them directly, it would provide one to Heidler, with whom it had had an ongoing borrowing relationship. In order for Heidler to obtain the construction loan, the Sowerses transferred their Creighton Road lot to him by warranty deed. The parties considered the transfer of this lot as satisfying the Sowerses' obligation to pay Heidler the nonrefundable $7,925 deposit. Heidler then signed a promissory note in favor of WSB to obtain the construction loan, which he secured by executing an Open-End Mortgage on the property in favor of WSB in the amount of $86,175.50. WSB advanced Heidler $15,000 to begin construction. The Sowerses further agreed to obtain a loan commitment from another lender and to use the proceeds from that loan to pay off both Heidler and WSB upon the completion of the residence, at which time, Heidler was to reconvey the property to the Sowerses.
 {¶ 4} In November 1999, Heidler began construction on the Sowerses' residence by doing some excavation work on the basement. However, Heidler stopped work on the basement, leaving it open for several months. In the spring of 2000, Heidler returned to the construction site and filled in the excavation that he had commenced. Heidler never returned after that to complete the construction of the residence.
 {¶ 5} When the Sowerses contacted WSB about the status of their residence, WSB informed them that it had already paid Heidler and several of his suppliers more than $40,000 for that construction project. In March 2000, Heidler defaulted on the promissory note that was secured by the mortgage on the Creighton Road lot, and several other loan obligations secured by properties on which he was serving as the general contractor. As a result, WSB required Heidler to transfer to it the deeds to all of these properties, including the Creighton Road lot.
 {¶ 6} In July 2001, the Sowerses filed a complaint against Heidler and WSB, alleging that Heidler was liable to them for breach of contract and fraud, and that WSB had been unjustly enriched by Heidler's actions and by its own actions or inactions. The Sowerses requested the trial court to order that WSB hold the Creighton Road lot as a constructive trustee, and to impress a constructive trust against that real property in their favor. Heidler subsequently filed a Chapter 7 Bankruptcy Petition, thereby protecting himself from the Sowerses' claims. The Sowerses proceeded against WSB alone.
 {¶ 7} On January 22, 2003, the trial court issued a judgment entry ordering WSB "to convey the [Sowerses'] real property back to them by an appropriate deed." The trial court did not address the Sowerses' unjust enrichment claim. Instead, it found that the Sowerses were entitled to recover against WSB on the grounds that they were intended third-party beneficiaries under WSB's construction loan agreement with Heidler. The trial court determined that the purpose of that agreement was to build a residence for the Sowerses, and that "[t]he performance contemplated and contracted for was the completion of the residence in a timely and workmanlike manner." The trial court ruled that WSB breached the agreement "by failing to monitor or inspect the project[.]" The trial court concluded that the Sowerses, as intended third-party beneficiaries of the agreement, were entitled "to a rescission of the construction agreement" because of WSB's alleged breach of the contract. The trial court then ordered WSB to convey the Creighton Road property to the Sowerses.
 {¶ 8} WSB now appeals from the trial court's decision and entry, and raises the following assignment of error:
 {¶ 9} "The trial court erred to the prejudice of defendant-appellant in ruling that defendant-appellant shall convey the real property the subject of this matter to plaintiffs-appellees as rescission of a construction contract between plaintiffs-appellees and their contractor."
 {¶ 10} WSB argues that the trial court erred in finding that the Sowerses were intended third-party beneficiaries of the construction loan between it and Heidler, and that WSB owed a duty to the Sowerses to monitor or inspect the construction project. Thus, WSB asserts, the trial court erred in concluding that the Sowerses were entitled to rescind their agreement to transfer their lot on Creighton Road to Heidler. We agree that the trial court erred in finding that the Sowerses were entitled to rescind their agreement to transfer the Creighton Road lot to Heidler, and in ordering WSB to convey that property to the Sowerses.
 {¶ 11} "Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio."Grant Thorton v. Windsor House, Inc. (1991), 57 Ohio St.3d 158, 161. A "third-party beneficiary" is "[a] person who, though not a party to a contract, stands to benefit from the contract's performance." Black's Law Dictionary (1999, 7th Ed.) 149. An "intended beneficiary" is "[a] third-party beneficiary who is intended to benefit from a contract and thus acquires rights under the contract as well as the ability to enforce the contract once those rights have vested." Id. However, an intended third-party beneficiary acquires no rights greater than those set forth in the contract. Union S. L. Co. v. Cook (1933), 127 Ohio St. 26, paragraph one of the syllabus.
 {¶ 12} Assuming arguendo that the Sowerses were intended third-party beneficiaries of the agreement between WSB and Heidler, the Sowerses still would not have been entitled to an order requiring WSB to convey the Creighton Road property back to them. Under the terms of their construction loan agreement, WSB was obligated to lend Heidler $86,175.50, while Heidler was obligated to repay it, with interest. WSB tendered their performance under the contract. Heidler did not. Thus, the Sowerses had nothing to enforce against WSB as an intended third-party beneficiary of the construction loan agreement between WSB and Heidler.
 {¶ 13} The trial court found that the purpose of the construction loan agreement between WSB and Heidler was to construct a residence for the Sowerses in a timely and workmanlike manner. We disagree with this broad assertion. While this may have been Heidler's purpose in obtaining the construction loan, it was not WSB's. Indeed, it was Heidler, not WSB, who agreed to construct a residence for the Sowerses in a timely and workmanlike manner. Furthermore, WSB never agreed "to monitor or inspect the project" for the Sowerses benefit. Therefore, they cannot be said to have breached the construction loan agreement as the trial court found.
 {¶ 14} The primary question that arises in this case is whether WSB owed a duty under Ohio law to the Sowerses to monitor or inspect the Creighton Road construction project to ensure that the funds it disbursed to Heidler for labor or materials were actually being used to build the Sowerses' residence. The trial court found that WSB owed such a duty to the Sowerses. However, the trial court was unable to cite any statute or case that imposes such a duty on a lender under the circumstances present here. The only authority that the Sowerses cite in defense of the trial court's judgment is the "gross negligence" language in R.C. 1311.011. That statute provides, in relevant part:
 {¶ 15} "(B) * * * [A]ll liens, except mortgage liens, that secure payment for labor or work performed or materials furnished in connection with a home construction contract or in connection with a dwelling or residential unit of condominium property, that is the subject of a homepurchase contract are subject to the following conditions:
 {¶ 16} "* * *
 {¶ 17} "(5) When making any payment under the home construction contract or on behalf of the owner or part owner under a home purchase contract, the lending institution may accept the affidavit of the original contractor required by division (B)(4) of this section and act in reliance upon it, unless it appears to be fraudulent on its face. The lending institution is not financially liable to the owner, part owner, purchaser, lessee, or any other person for any payments, except for grossnegligence or fraud committed by the lending institution in making any payment to the original contractor." (Emphasis added.)
 {¶ 18} It is apparent that R.C. 1311.011 has no application in this case, because the lien at issue here is a mortgage lien, and, therefore, is not subject to the conditions listed in R.C. 1311.011(B)(1)-(9). Furthermore, R.C. 1311.011(B)(5) has no application, since WSB never made "any payment under the home construction contract or on behalf of the owner or part owner under a home purchase contract[.]" A "home construction contract" refers to a contract entered into between an original contractor and the owner, part owner or lessee of the dwelling or land at issue. See R.C. 1311.011(A)(1). Furthermore, to the extent that the Sowerses entered into a "home purchase contract," see R.C.1311.011(A)(2), they did so only with Heidler. And they financed that contract with a loan from a separate lending institution.
 {¶ 19} The last issue that needs to be addressed is the Sowerses' claim that WSB would be unjustly enriched if it was not forced to reconvey the Creighton Road property to them. We disagree with this argument.
 {¶ 20} "Unjust enrichment of a person occurs when the person has and retains money or benefits that in justice and equity belong to another, [footnote omitted] and it arises not only where an expenditure by one person adds to the property of another but also where the expenditure saves the other from expense or loss. [Footnote omitted.]
 {¶ 21} "One is unjustly enriched if the retention of a benefit would be unjust, and one should not be allowed to profit or enrich himself or herself inequitably at another's expense. Moreover, there may be a recovery where the receipt of a benefit by one person from another and the retention of that benefit would be unjust. [Footnote omitted.]
 {¶ 22} "* * *
 {¶ 23} "* * * It is not sufficient for the plaintiff to show that he or she has conferred a benefit on the defendant. The plaintiff must go further and show that, under the circumstances, he or she has a superior equity so that, as against him or her, it would be unconscionable for the defendant to retain the benefit. [Footnote omitted.]" 18 Ohio Jurisprudence 3d (2001) 194, Contracts, Section 299.
 {¶ 24} In this case, the Sowerses cannot show that it would be unconscionable to allow WSB to retain the Creighton Road property that Heidler used as security for the construction loan he obtained from WSB. The bottom line is that both WSB and the Sowerses chose to rely on Heidler, and both lost money as a result. Both parties assumed the risk that Heidler would not perform his obligations under his agreements with them. While the trial court's desire to place the entire loss on the shoulders of the party that is best able to bear it is understandable, it is, nevertheless, unacceptable.
 {¶ 25} WSB's assignment of error is sustained.
 {¶ 26} The trial court's judgment is reversed. Pursuant to App.R. 12(B), judgment is entered in favor of WSB on the Sowerses' claims against it.
Walsh and Powell, JJ., concur.