The STATE ex rel. CORDRAY, Atty. Gen., Appellee,

v.

MAKEDONIJA TABAK 2000 et al., Appellees;

Leader Tobacco Company, Inc., Appellant.

[Cite as *State ex rel. Cordray v. Leader Tobacco Co., Inc.*, 189 Ohio App.3d 73, 2010-Ohio-2903.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–402.

Decided June 24, 2010.

74

Richard Cordray, Attorney General, and Gregory T. Hartke and Angela M. Sullivan, Assistant Attorneys General, for appellee.

Law Office of Barry Boren and Barry Boren; Patmon L.L.C., Attorneys at Law, and William W. Patmon III; and Gerson M. Joseph, for appellant.

BROWN, Judge.

{¶ 1} This is an appeal by defendant-appellant, Leader Tobacco Company, Inc., from a judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of plaintiff-appellee, the state of Ohio ex rel. the attorney general of Ohio, and denying appellant's cross-motion for summary judgment.

{¶ 2} This case arises out of appellee's complaint for injunctive relief, requesting enforcement of Ohio's law requiring certain tobacco-product manufacturers to file an annual certification and to make payments into an escrow account based on the number of units of cigarettes sold by a manufacturer in the state. By way of background, in 1998, various major tobacco companies entered into a Master

Settlement Agreement ("MSA") with representatives of 46 states, including Ohio, the District of Columbia, and five territories. See *Carolina Tobacco Co. v. Petro*, 10th Dist. No. 04AP–1125, 2006-Ohio-1205, 2006 WL 648851, ¶ 2. Under the MSA, "the states agreed to dismiss their pending suits against the settling tobacco companies; in return, these companies, designated as 'original participating manufacturers,' agreed to make yearly payments to the states to defray health costs from smoking-related illnesses and to fund smoking prevention programs." Id.

{¶ 3} Not all tobacco-product manufacturers are required to participate in the MSA, and tobacco-product manufacturers who choose not to participate are referred to as "non-participating manufacturers" ("NPMs"). Id. at ¶ 3. Under the MSA, however, "states are required to enact certain legislation known as 'qualifying statutes,' requiring NPMs to make annual payments, based on their annual sales, into an interest earning escrow account; those funds are to be available to pay any future judgments or settlement of claims brought against NPMs." Id.

{¶ 4} Ohio's qualifying statute (effective June 30, 1999) is codified in R.C. Chapter 1346. R.C. 1346.02(B)(3) states: "Each tobacco product manufacturer that elects to place funds into escrow pursuant to division (B) of this section shall annually certify to the attorney general that it is in compliance with division (B) of this section." The failure on the part of a tobacco-product manufacturer to place funds into escrow subjects it to potential fines (R.C. 1346.02(B)(3)(a) and (b)) and the prohibition against selling cigarettes in the state for up to two years (R.C. 1346.02(B)(3)(c)).

{¶ 5} On November 9, 2004, appellee filed a complaint for injunctive relief against Makedonija Tabak 2000 ("MT–2000") and appellant, asserting noncompliance with Ohio's qualifying statute. The complaint alleged that MT–2000 is a "tobacco product manufacturer," as defined under R.C. 1346.01; further, that MT–2000 manufactured cigarettes to be sold in the United States under the brand name "Infinity" and sold those cigarettes to consumers in Ohio during the calendar year 2003. The complaint alleged that MT–2000 had not become a "participating manufacturer" under the terms of the MSA and that it had not fulfilled its obligations as an NPM under Ohio law. Specifically, it was alleged that MT–2000 (1) failed to certify to appellee that it had established a qualified escrow fund and (2) failed to make proper escrow deposits with respect to the units of cigarettes it sold in Ohio during the calendar year 2003.

{¶ 6} The complaint further alleged that appellant is a tobacco-product importer, as well as MT–2000's agent and attorney-in-fact, for purposes of establishing, funding, and maintaining bank and escrow accounts to fund MT–2000's escrow obligations under R.C. 1346.02. Appellee alleged that appellant had failed to

place amounts into escrow as required under an irrevocable limited power of attorney ("power of attorney") executed between appellant and MT–2000 on December 27, 2002.

{¶ 7} Appellee sought preliminary and injunctive relief ordering MT–2000 and appellant to place funds into a qualified escrow fund. Appellee also sought the imposition of a civil penalty, pursuant to R.C. 1346.02, against both MT–2000 and appellant.

{¶ 8} On February 14, 2005, appellant filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. In its motion, appellant asserted that R.C. Chapter 1346 does not authorize the assessment of liability against any entity other than a "tobacco product manufacturer" and that the state lacked standing to sue for an alleged breach of any provision of a limited power of attorney between MT–2000 and appellant when the state was not a third-party beneficiary of the power of attorney. Appellant also argued that the trial court lacked subject-matter jurisdiction based upon a forum-selection clause in the power of attorney requiring suits to be brought in Florida and that appellant, a Florida corporation, was not subject to personal jurisdiction under Ohio's long-arm statute. By decision and entry filed October 5, 2005, the trial court denied appellant's motion to dismiss.

{¶ 9} On January 11, 2006, appellee filed a motion for summary judgment. On February 6, 2006, appellant filed a memorandum contra appellee's motion for summary judgment, as well as a cross-motion for summary judgment.

{¶ 10} On March 25, 2009, the trial court issued a decision granting appellee's motion for summary judgment and denying appellant's cross-motion for summary judgment. In its decision, the trial court determined that appellee was a third-party beneficiary of the power of attorney between appellant and MT–2000. The court further found that MT–2000 and appellant were jointly and severally liable for MT–2000's sale of Infinity brand cigarettes in Ohio and, thus, jointly and severally liable to appellee for a monetary civil fine pursuant to R.C. 1346.02(B)(3)(c). The decision of the court was journalized by judgment entry filed April 24, 2009.

{¶ 11} On appeal, appellant sets forth the following seven assignments of error for this court's review:

1. The trial court erred in finding the State of Ohio is a third party beneficiary of a Power of Attorney ("POA") by and between Defendant Makedonija Tabak 2000 ("MT–2000") and Leader Tobacco, Inc. ("Leader").

2. The trial court erred in failing to enforce a limitation of liability clause in the Power of Attorney ("POA") by and between Makedonija Tabak 2000 ("MT–2000") and Leader Tobacco, Inc. ("Leader").

3. The trial court erred in failing to enforce the forum selection clause of the POA.

4. The trial court erred in asserting personal jurisdiction over Leader.

5. The trial court erred in finding Leader breached it[s] agreement with MT–2000.

6. The trial court erred in finding O.R.C. § 1346.01 *et. seq.* applies to both agents and tobacco manufacturers.

7. The trial court erred in applying the penalty clauses of ORC § 1346.01 *et. seq.* against Leader on the ground that Leader breached its *contractual* obligations to MT–2000 under the POA.

(Emphasis sic.)

{¶ 12} We will first address jointly the jurisdictional arguments raised under appellant's third and fourth assignments of error. Under the third assignment of error, appellant argues that the trial court erred in failing to enforce a forum-selection clause contained in the power of attorney entered between appellant and MT–2000. Under the fourth assignment of error, appellant contends that the trial court erred in asserting personal jurisdiction over it (a nonresident defendant).

{¶ 13} With respect to the third assignment of error, appellant challenges the trial court's determination that a forum-selection clause did not preclude the court from exercising jurisdiction over the case. At issue is the language of the "Applicable Law" section, set forth in the power of attorney executed by appellant and MT–2000, stating: "[A]ny suit, action or proceeding arising out of or relating to this Agreement may be commenced and maintained in any court of competent subject matter jurisdiction in Miami–Dade County, Florida and each party waives objection to such jurisdiction and venue."

{¶ 14} Appellant argues on appeal, as it did before the trial court, that the above provision mandates that venue for this action lies solely in Florida. The trial court held that "the use of the word 'may' merely suggests that Miami–Dade County, Florida is the preferred venue, and does not require that Miami–Dade County, Florida be the sole venue in which all disputes arising from the agreement be litigated."

{¶ 15} When a contract contains a valid forum-selection clause, courts typically classify that clause as permissive or mandatory. *Emerald Grande, Inc. v. Junkin* (C.A.11, 2009), 334 Fed.Appx. 973, 975. A permissive clause authorizes

jurisdiction in a designated forum, but does not prohibit litigation elsewhere, whereas a mandatory clause dictates an exclusive forum for litigation under the agreement. Id. at 975–976. Further, "a mandatory forum selection clause 'must clearly display the intent of the contracting parties to choose a particular forum to the exclusion of all other.'" *Patel v. Patel,* 10th Dist. No. 06AP–1260, 2007-Ohio-5963, 2007 WL 3293379, ¶ 14, quoting *Arguss Communications Group, Inc. v. Teletron, Inc.* (D.N.H.1999), No. CIV. 99–257–JD, 2000 WL 36936, *7.

{¶ 16} In the present case, we agree with the trial court that the "Applicable Law" provision employs permissive ("may"), rather than mandatory language. See, e.g., *Blanco v. Banco Indus. de Venezuela, S.A.* (C.A.2, 1993), 997 F.2d 974, 979, quoting *Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.* (C.A.2, 1985), 760 F.2d 390, 394–396 ("the Forum Provision was permissive in its language ('may be brought'), and 'le[ft] open the possibility that an action could be brought in any forum where jurisdiction can be obtained'"); *Florida State Bd. of Adm. v. Law Engineering & Environmental Servs.* (D.C.Minn.2003), 262 F.Supp.2d 1004, 1009 (generally, courts have found that the use of the words "may" and "should" signify permissive forum-selection clauses). Here, we find that the trial court did not err in rejecting appellant's claim that the forum-selection clause mandated venue in Florida.

{¶ 17} We next consider appellant's contention that the court erred in asserting personal jurisdiction over it. In considering whether to exercise personal jurisdiction over a nonresident defendant, a trial court is required to "(1) determine whether Ohio's long-arm statute and the applicable civil rule (Civ.R. 4.3(A)) confer personal jurisdiction and, if so, (2) whether granting jurisdiction under the statute and rule would deprive the non-resident defendant of due process under the Fourteenth Amendment of the United States Constitution." *State ex rel. Atty. Gen. v. Grand Tobacco,* 171 Ohio App.3d 551, 2007-Ohio-418, 871 N.E.2d 1255, ¶ 14.

{¶ 18} The trial court decided the issue of personal jurisdiction without holding an evidentiary hearing. In such circumstances, a trial court "must consider the allegations in the pleadings, as well as any other evidentiary materials, in a light most favorable to the party seeking to establish personal jurisdiction, and determine whether that party has set forth a prima facie case for jurisdiction." *State ex rel. Atty. Gen. v. Bulgartabac Holding Group,* 10th Dist. No. 07AP–177, 2007-Ohio-6777, 2007 WL 4395514, ¶ 10. This court reviews a trial court's decision to exercise personal jurisdiction under a de novo standard. *Grand Tobacco,* 171 Ohio App.3d 551, 2007-Ohio-418, 871 N.E.2d 1255, at ¶ 13.

{¶ 19} In denying appellant's motion to dismiss for lack of personal jurisdiction, the trial court noted that MT–2000 and appellant had entered into a

power of attorney whereby appellant agreed to file all requisite paperwork and to make all required deposits into a qualified escrow account with respect to cigarettes it imported from MT–2000. The trial court found that appellant and MT–2000, by executing the power of attorney, purposely availed themselves of the privilege of conducting business in Ohio. The trial court further found that appellant should have reasonably anticipated being haled into an Ohio court and concluded that maintenance of this suit in Ohio did not offend traditional notions of fair play and substantial justice.

{¶ 20} On appeal, appellant argues that Ohio's long-arm statute does not provide for jurisdiction over agents and further argues that the trial court erred in basing personal jurisdiction on the power of attorney. In response, appellee maintains that it is not making a general assertion that any and all agents acting on behalf of tobacco manufacturers will be held liable for the obligations of an NPM. Rather, appellee argues, appellant and MT–2000, by virtue of the power of attorney, assumed more than just a traditional principal-agent relationship whereby appellant, in addition to contracting to import and market MT–2000's Infinity brand cigarettes, also contracted to assume MT–2000's statutory escrow obligations and responsibilities.

{¶ 21} In opposing appellant's motion to dismiss, appellee argued before the trial court that personal jurisdiction was proper under R.C. 2307.382(A)(1), based upon the contention that appellant had transacted business in Ohio. In support, appellee submitted a copy of the power of attorney in which appellant agreed to set up, fund, and maintain MT–2000's escrow account, as required of NPMs under Ohio's qualifying statute. The power of attorney states:

WHEREAS, MT–2000 is selling its cigarettes to LEADER wherein LEADER takes possession of the cigarettes before the goods enter the commerce of the U.S.A. * * *

WHEREAS, MT–2000 is * * * willing to sell cigarettes to LEADER and allow LEADER to set up bank accounts on behalf of MT–2000 in the U.S.A. with which to fund any escrow obligation the states assert that MT–2000 has; and

WHEREAS, MT–2000 for this limited purpose, and no other, is hereby willing to appoint LEADER as its attorney-in-fact under this Irrevocable Limited Power of Attorney solely for the purpose of funding, establishing and maintaining bank and escrow accounts to fund MT–2000's state mandated escrow obligations wherein LEADER will be the sole signatory on these accounts.

(Capitalization sic.)

{¶ 22} Appellee's response to the motion to dismiss further alleged that appellant was the sole importer of Infinity brand cigarettes sold in Ohio in 2003

and that in accordance with the terms of the power of attorney, appellant filed MT–2000's certification form to sell Infinity cigarettes in Ohio in 2003. In support, appellee submitted the affidavit of Dale Bischoff, an administrator with the Ohio Department of Taxation, who averred that 14.1 million Infinity cigarettes were imported and sold in Ohio during 2003. Also attached to appellee's response were reports furnished to the Ohio Department of Taxation documenting the number of cigarettes sold in Ohio with respect to brands not covered by the MSA.

{¶ 23} Under Ohio law, "the phrase 'transacting any business' has a broad meaning that goes beyond the entry into contracts." *Bulgartabac Holding Group*, 2007-Ohio-6777, 2007 WL 4395514, at ¶ 12, citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 559 N.E.2d 477. A defendant will be "considered to have transacted business in Ohio 'if the business operations set in motion by the defendant have a "realistic impact" on Ohio commerce.'" *Bulgartabac Holding Group* at ¶ 12, quoting *Priess v. Fisherfolk* (S.D.Ohio 1982), 535 F.Supp. 1271, 1274.

{¶ 24} Upon review, and considering the evidence submitted in a light most favorable to appellee, we find that the record supports the trial court's determination that appellee provided prima facie evidence that appellant was sufficiently transacting business in Ohio to establish personal jurisdiction under the state's long-arm statute. Appellant's activities, by virtue of the obligations under the power of attorney, involved responsibilities normally required of an NPM in order to sell cigarettes in the state, including the responsibility to establish the manufacturer's escrow account and to file the requisite certification. Further, the sale of Infinity brand cigarettes in Ohio was not accidental; rather, the execution of the agreement resulted in approximately 14 million cigarettes imported by appellant to be sold in the state, and we agree with the trial court's determination that the conduct of appellant, in conjunction with the tobacco-product manufacturer, was sufficient to support that court's exercise of personal jurisdiction. See *Vermont v. Makedonija Tabak 2000* (Vt.Super.Ct., Nov. 18, 2005), Docket No. 327–7–04 Wncv, 2005 WL 5895231 (tobacco importer's decision to file certification on behalf of tobacco-product manufacturer, for the purpose of advancing importer's own commercial interests and having cigarettes approved for sale in Vermont, sufficient to confer personal jurisdiction on court). Further, we find no error in the trial court's determination that appellant purposely availed itself of the privilege of conducting business in this state so that the maintenance of the action in Ohio would not offend traditional due-process concerns of fair play and substantial justice.

{¶ 25} Based upon the foregoing, appellant's third and fourth assignments of error are without merit and are overruled.

{¶ 26} Appellant's first, second, fifth, sixth, and seventh assignments of error, which raise challenges to the propriety of the trial court's grant of summary judgment in favor of appellee, will be addressed together. When reviewing a trial court's ruling on summary judgment, an appellate court applies a de novo standard of review. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24, citing *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. Pursuant to Civ.R. 56(C), "summary judgment shall be granted when the filings in the action, including depositions and affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Bonacorsi* at ¶ 24.

{¶ 27} We initially address appellant's argument that a material issue of fact exists regarding the trial court's determination that appellee was a third-party beneficiary of the power of attorney executed between appellant and MT–2000. We note that the power of attorney contained a choice-of-law provision, providing that the parties' agreement "shall be construed in accordance with the laws of the State of Florida," and the trial court cited Florida law in finding appellee to be a third-party beneficiary of the power of attorney between appellant and MT–2000.

{¶ 28} Under Florida law, a nonparty to a contract can sue on a contract "only where that party was an intended beneficiary of the contract; non-parties who receive merely an incidental or consequential benefit from a contract have no right to its enforcement." *Rebman v. Follett Higher Edn. Group, Inc.* (M.D.Fla.2008), 575 F.Supp.2d 1272, 1276. A nonparty is an intended beneficiary "only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.* (Fla.App.1994), 647 So.2d 1028, 1031. See also *Progress Rail Servs. Corp. v. Hillsborough Area Regional Transit Auth.* (D.C.Fla.2006), No. 8:04–cv–200–T–23EAJ (the fact that a nonparty receives a benefit from the contract does not necessarily establish that the contracting parties intended to "primarily and directly" benefit the nonparty).

{¶ 29} Thus, in order to plead a cause of action for breach of a third-party beneficiary contract in Florida, the following elements must be demonstrated:

(1) a contract between A and B;

(2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party (or a class of persons to which that party belongs);

(3) breach of that contract by either A or B (or both); and

(4) damages to C resulting from the breach.

*Caretta Trucking* at 1031.

{¶ 30} In the instant case, it is undisputed that appellee was not a party to the power of attorney. As noted previously, under the terms of the agreement, MT–2000 appointed appellant as its attorney-in-fact for the purpose of "establishing and maintaining bank and escrow accounts to fund [Tabak 2000's] state mandated escrow obligations."

{¶ 31} In its cross-motion for summary judgment, appellant challenged appellee's claim that it was a third-party beneficiary of the power of attorney. In support of its motion, appellant submitted the affidavit of Barry Boren, counsel for appellant and the individual responsible for drafting the power of attorney executed by appellant and MT–2000. In his affidavit, Boren averred that the power of attorney was drafted for the following two reasons: (1) to "solve the logistics problems MT–2000 and Leader were facing in establishing and maintaining the escrow" and (2) "because Leader wanted to make it absolutely clear to MT–2000 that Leader was not willing to accept any of MT–2000's liability to the State." According to Boren, "[n]either Leader or MT–2000 intended for the State to have any right of action against Leader by virtue of the [power of attorney] nor was it written to 'primarily and directly benefit' the State." Boren further averred in the affidavit: "To make it crystal clear that Leader was not assuming any liability to any state or the manufacturer for any obligations arising under the MSA, I included a limitation of liability clause."

{¶ 32} The "limitation of liability" clause, referred to in Boren's affidavit and set forth in paragraph 11 of the power of attorney, states:

It is hereby understood, acknowledged, and agreed by and between the parties hereto that LEADER * * * is acting under the terms of this Agreement as an independent contractor and is not an employee of MT–2000, nor is it accepting any of MT–2000's liability under the MSA or the escrow laws of any state.

{¶ 33} Appellee argues that the language of the power of attorney does not contain any ambiguity, and, therefore, there is no need to look outside the language of the agreement to determine the issue of intent to benefit. Accordingly, appellee contends that there was no reason for the trial court to have considered the affidavit of Boren.

{¶ 34} Appellant, on the other hand, argues that the trial court failed to consider the import of the limitation-of-liability clause contained in the power of attorney. Appellant further contends that reasonable persons can find different meaning in the agreement's language, as demonstrated by the fact that a court in another jurisdiction arrived at a different construction of the identical limitation-

of-liability clause in holding that the state of Vermont was not a third-party beneficiary of a power of attorney between appellant and MT–2000. Specifically, in *Vermont v. Makedonija Tabak 2000,* the state of Vermont brought an action against the same defendants as in the instant case, i.e., appellant (Leader Tobacco Co., Inc.) and MT–2000 (Makedonija Tabak 2000), alleging that the defendants had failed to comply with that state's law requiring an NPM to establish a tobacco escrow account.

{¶ 35} As in the instant case, the agreement between the parties was documented in a power of attorney, whereby appellant (an importer) agreed to "file the required reports with all states and make the required deposits into escrow with regard to the MT 2000 cigarettes it imported."[1] Id. The power of attorney also contained a limitation-of-liability clause, setting forth the same language as the agreement at issue in the instant case, i.e., that "Leader was not 'accepting any of MT–2000's liability under the MSA or the escrow laws of any state.'" Id.

{¶ 36} In *Vermont v. Makedonija Tabak 2000,* the state asserted that it was a third-party beneficiary of the power of attorney between appellant and MT–2000 and, as such, could enforce its terms against appellant. The court rejected that argument, holding: "[T]he POA itself states that Leader was not 'accepting any of MT–2000's liability under the MSA or the escrow laws of any state,'" and, thus, "[t]he intent of the parties was expressly *not* to give states the right to use the POA as Vermont now seeks to do." (Emphasis sic.) Id. The court concluded that "even if the State is correct that there is a presumption of intent to benefit when a third party is benefited, here any such presumption is rebutted by the language of the document." Id.

{¶ 37} Under Florida law, the general rule is that "'the construction of a written contract is a matter of law to be determined by the court, but if the wording is ambiguous and the parties present different interpretations, the *issue of proper interpretation can become one of fact,* thus precluding summary judgment.'" (Emphasis sic.) *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.* (S.D.Fla.2004), 328 F.Supp.2d 1319, 1344–1345, quoting *Allen C. Ewing & Co. v. Freedle* (C.A.Fla.1988), 521 So.2d 384, 386. Under such circumstances, "Florida law requires that a dispute over whether a third party beneficiary is intended or incidental shall go to the jury." *Excess Risk Underwriters* at 1345.

{¶ 38} Upon review, we agree with appellant that there exist genuine issues of material fact with respect to the issue of whether appellee is an intended third-

---

1. Under the facts of that case, over two million cigarettes were imported by appellant and sold in Vermont over a period of approximately two years. The state subsequently requested a copy of the power of attorney and filed an action against Leader Tobacco Company and Makedonija Tabak 2000.

party beneficiary of the agreement. As cited above, appellant submitted the affidavit of Boren, the attorney who drafted the power of attorney, in which he averred that neither party to the agreement "intended for the State to have any right of action against Leader by virtue of the POA nor was it written to 'primarily and directly benefit' the State." Rather, according to Boren, the agreement was intended to primarily benefit the contracting parties, who faced logistics problems in complying with the qualifying statute.

{¶ 39} Accepting the premise that the state derives a benefit from appellant assuming the escrow responsibilities of an NPM, it is also clear that the parties to the power of attorney specifically provided that appellant was not "accepting any of MT–2000's liability under the MSA or the escrow laws of any state." As noted by appellant, the trial court's decision granting summary judgment in favor of appellee does not discuss the import of the limitation-of-liability clause, and it is not clear whether the trial court interpreted that language in reaching its decision. However, even assuming appellee to be a third-party beneficiary of the power of attorney, it would be bound by the terms of the agreement, including the limitation-of-liability provision. At minimum, appellant has raised a genuine issue of fact as to whether the power of attorney was created to primarily and directly benefit appellee, thereby precluding summary judgment in favor of appellee.

{¶ 40} The trial court also failed to discuss the import of the limitation-of-liability clause in awarding appellee's request for a statutory penalty against appellant pursuant to R.C. 1346.02. While appellee argued before the trial court that it sought liability against appellant based upon the terms of the contract (power of attorney) and not the qualifying statute, it nevertheless sought penalties against appellant based upon those statutory provisions; further, the trial court granted appellee that relief, finding appellant and MT–2000 "jointly and severally liable to Plaintiff for a monetary fine [under R.C. 1346.02(B)(3)(c) ] in the amount of $830,346.63, which represents three hundred percent of the total dollar amount wrongfully withheld from escrow."

{¶ 41} Appellant argues that even assuming appellee is a third-party beneficiary of the power of attorney (and further assuming a breach by appellant), appellee would stand in the shoes of MT–2000, and its remedies would be limited to the same damages MT–2000 could seek from appellant under the parties' contract. We agree. Setting aside the fact that R.C. 1346.02 speaks solely to actions by the attorney general on behalf of the state against a "tobacco product manufacturer" (and not an importer), the right of a third-party beneficiary to enforce a contract under Florida law "cannot 'rise higher than the rights of the contracting party through whom he claims.'" *Maryland Cas. Co. v. Dept. of Gen. Servs.* (Fla.App.1986), 489 So.2d 54, 57, quoting *Crabtree v. Aetna Cas. &*

*Sur. Co.* (D.C.Fla.1983), 438 So.2d 102, 105.[2]   Again, the limitation-of-liability clause made clear the parties' intent that appellant not be subject to liability for MT–2000's obligations "under the MSA or the escrow laws of any state."   Thus, while a third-party beneficiary might be entitled to assert specific performance of the agreement, i.e., funding of the escrow, appellee would not have the right, under the terms of the agreement, to enlarge the liability of appellant and seek the imposition of a civil fine under the qualifying statute.   Accordingly, even if appellee is found to be a third-party beneficiary under the agreement, we would agree with appellant that the trial court erred in assessing statutory penalties as a form of contract damages.

{¶ 42} Having determined that genuine issues of material fact remain as to whether appellee is an intended third-party beneficiary of the power of attorney, thereby precluding summary judgment and requiring a remand, we address one final issue raised by appellant;   specifically, appellant's contention that genuine issues of material fact remain with regard to whether it actually breached the agreement with MT–2000.   Appellant argues that the trial court merely assumed the existence of a breach, despite no record evidence to support such a finding, and appellant maintains that it had a valid defense to a breach-of-contract claim.   The trial court's discussion of the element of breach, in ruling on appellant's motion to dismiss for lack of subject-matter jurisdiction, is conclusory (finding it "undisputed" that the element of breach had been shown).   In general, a third-party beneficiary suing under a contract is subject to the same defenses that the promisor could raise in a suit by the promisee.   *Robbins v. Prosser's Moving & Storage Co.* (C.A.8, 1983), 700 F.2d 433, 436, citing Calamari & Perillo, Contracts 623 (2d Ed.1977).   While the complaint in this case contains allegations that appellant failed to fund the escrow, we find the factual record not sufficiently developed to determine whether appellant may have a viable defense;   we simply note, however, that any defenses that may be available to appellant remain open on remand.

{¶ 43} Based upon the foregoing, appellant's third and fourth assignments of error are overruled;   the first, second, fifth, sixth, and seventh assignments of error are sustained;   the judgment of the Franklin County Court of Common Pleas is reversed;   and this matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

Judgment reversed<br>and cause remanded.

---

2.   Similarly, under Ohio law, "an intended third-party beneficiary acquires no rights greater than those set forth in the contract."   *Sowers v. Heidler,* 12th Dist. No. CA2003–02–002, 2003-Ohio-6787, 2003 WL 22950177, ¶ 11, citing *Union S. & L. Co. v. Cook* (1933), 127 Ohio St. 26, 186 N.E. 728, paragraph one of the syllabus.

TYACK, P.J., concurs.

SADLER, J., concurs in part and dissents in part.

SADLER, Judge, concurring in part and dissenting in part.

{¶ 44} Being unable to agree completely with the majority's disposition of this case, I respectfully concur in part and dissent in part.

{¶ 45} I do not agree with the majority's conclusion that genuine issues of material fact exist regarding whether MT–2000 and Leader specifically intended for the state to be a third-party beneficiary of the power of attorney granted to Leader by MT–2000. Specifically, the power of attorney's unambiguous language shows that the state is an intended third-party beneficiary; thus, I would not consider the affidavit executed by Barry Boren attempting to explain the intent of the parties.

{¶ 46} The power of attorney specifically provided that its purpose was to delegate to Leader the duty of "funding, establishing and maintaining bank and escrow accounts to fund MT–2000's state mandated escrow obligations." Delegation of the duty to comply with state escrow laws to Leader directly benefits the state because it allows the state to avoid the difficulties involved in pursuing actions against foreign tobacco manufacturers whose products have entered the stream of commerce, thus making it easier for the state to enforce the escrow provisions that were enacted as part of the state's duties under the Master Settlement Agreement, the purpose of which is to prevent nonparticipating manufacturers from obtaining a competitive advantage over those manufacturers that did participate.

{¶ 47} The evidence shows that 14 million cigarettes manufactured by MT–2000 were sold in Ohio, with no escrow payments made for those cigarettes as provided by Ohio law. In my view, the resulting frustration of the purpose behind the enactment of the escrow statute is sufficient damage to the state to find that the state can satisfy the damages element necessary to be a third-party beneficiary of the power of attorney. Because the power of attorney between Leader and MT–2000 meets the requirements as set forth in the majority decision for the state to be considered a third-party beneficiary of their agreement, I would overrule appellant's first assignment of error.

{¶ 48} Further, I believe Leader's reliance on the limitation-of-liability language contained in the power of attorney is misplaced. I believe that language is relevant to the issue of whether Leader can be held responsible to the state for the civil penalties associated with the failure to pay the escrow obligation as outlined by the majority in its discussion of appellant's seventh assignment of error, but that limitation does not affect the question of whether the state is a

third-party beneficiary of the agreement between Leader and MT–2000. Therefore, I would overrule appellant's second assignment of error.

{¶ 49} The majority decision does not separately address the argument that appellant raises in its sixth assignment of error, finding that it should be sustained based on the analysis of appellant's first assignment of error. In its sixth assignment, appellant argues broadly that the law governing nonparticipating manufacturers as set forth in R.C. 1346.01 et seq. can never be applied to the agent of a nonparticipating manufacturer. It appears that appellant is arguing that a nonparticipating manufacturer cannot legally delegate its duties under the nonparticipating manufacturer statute to third parties, and by sustaining appellant's sixth assignment of error, it appears that the majority is accepting that broad principle. I disagree, as I do not believe anything in R.C. 1346.01 et seq. prohibits a nonparticipating manufacturer from delegating its duties to a third party. Therefore, I would overrule appellant's sixth assignment of error.

{¶ 50} I agree with the majority decision in all other respects and would therefore also overrule appellant's third and fourth assignments of error and sustain appellant's fifth and seventh assignments of error. Consequently, I respectfully concur in part and dissent in part.